Hillsborough,  
March 1, 1938.

MORRIS ROSENBLUM & *a.*

*v.*

JOHN F. GRIFFIN, *Comm'r of Motor Vehicles.*

ALFRED J. GOREY *v.* SAME.

*Sullivan & Sullivan (Mr. John L. Sullivan* orally), for the plaintiffs.

*Thomas P. Cheney*, Attorney-General, *Frank R. Kenison*, Assistant Attorney-General, and *J. Blanche Newhall (Mr. Kenison* orally), for the defendant.

ALLEN, C. J.   The attacked act (Laws 1937, *c.* 161) is designed to induce operators of motor vehicles to establish financial responsibility to meet their possible liability for damages arising from accidents occurring while their vehicles are being operated.   The inducement is the alternative of suspension, and denial of renewal, of registration and operating licenses until proof of such responsibility

is furnished not only to meet liability arising from an accident occurred but also to meet liability for all operation thenceforth.

The test of an accident without regard to fault or a charge of fault as the occasion for giving the law operative effect is in some aspects an arbitrary one. It discriminates among innocent persons, between those escaping and those not escaping accident. A car owner or operator fortunate enough not to be struck by a negligent driver need not, while one who in spite of all possible care does not escape must, furnish security. Proper operation is immaterial and innocent misfortune is penalized. To use an appropriate expression, insult is added to injury.

But the act is not fairly susceptible of a more equitable construction. The important section (6) reads as follows: "Upon receipt by him of the report of an accident which has resulted in bodily injury or death, or in damage to property in excess of twenty-five dollars, the commissioner shall forthwith suspend the license of any person operating, and the registration certificates and registration plates of any person owning, a motor vehicle . . . in any manner involved in such accident unless and until such operator or owner or both shall have previously furnished or immediately furnishes sufficient security to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such owner or operator by or on behalf of the aggrieved person or his legal representative, and unless and until such owner or operator or both shall immediately give and thereafter maintain proof of financial responsibility in the future."

The commissioner is to issue the orders of suspension "forthwith" upon receipt of the report. The report may contain no statement indicating fault of the owner or operator whose license is to be suspended and may even exonerate the operator from fault. The duty of the commissioner to suspend only upon a provisional judicial finding of negligence (Laws 1927, c. 54, s. 3) or upon his own investigation leading to such a finding (Laws 1929, c. 189, ss. 1, 2) no longer exists, a section (28) of the act repealing those laws. The descriptive phrase of a motor vehicle "involved in such accident" might by itself imply a charge of liability, and thus cover more than fortuitous circumstances. But reference to other sections shows that no such meaning inheres in the phrase. The same phrase is employed in other sections of the act, in which the expression clearly excludes the need of fault. By one section (s. 5) reports are to be furnished by any operator of a car thus involved, and the require-

ment of reports under previous legislation (P. L., *c.* 102, *s.* 17; Laws 1931, *c.* 84, *s.* 1) has always been understood to apply to operators meeting with accident, regardless of their fault. By another section (*s.* 10) even if no claim or suit is brought against the owner or operator of a car thus involved, no suspension of a license shall be discharged nor shall it be renewed until proof of financial responsibility shall be given and thereafter maintained. While in the considered section there is reference to "the aggrieved" person, and while such a person is one claiming legal liability for damages he sustains, yet it is not a condition of the act that some person sustaining damages in an accident shall be aggrieved. If the commissioner were not to suspend licenses until he had notice of a claim of liability, in many cases he could not suspend forthwith upon receiving report of an accident.

From a practical standpoint, if there is fault for an accident, it is reasonable that suspension should follow, and immediately. But provisional finding of fault is indecisive and much less is a charge or claim of fault. Unless in a case where the doctrine of *res ipsa loquitur* might be invoked, an accident of itself is no evidence of liability for it, and a charge of liability has no tendency to prove it. The determination of a contested claim of fault is usually after a substantial length of time subsequent to the accident. The development of the legislation in meeting the problem of prospective liability, either probable or possible, for an accident, has led to the final policy of ignoring it as a test of suspension.

It may with reason be thought unjust that unless an operator is actually at fault for an accident, either he or the owner if not the operator should lose his license. However, there is equality between them and all others meeting with accident for which they are not liable. The inequality is with those fortunate to escape accident. But though the act thus produces hardship, it establishes conditions which are definite and conclusive in meeting the need of prompt action. In some measure the suspensions are in analogy with mesne attachments, arrests on mesne process, and recognizances to keep the peace.

Considering the constitutionality of the act as thus construed in *Opinion of the Justices*, 81 N. H. 566, the view was taken that highway use of a motor vehicle may not be permitted until the owner's financial ability by insurance protection or otherwise, to meet liability arising out of its operation is established. As therein stated (568): "A general provision that a motor vehicle may be operated

upon the public highways only when adequate provision has been made for compensation to persons injured because of fault in such operation, is a valid law."

Two reasons were thought to avail for sustaining such a law. One was its character as a regulation of the use of public highways and the other was its capacity to secure public safety in dangerous agencies and operations. This latter reason has slight if any evidence for its factual support. Certainly, in the absence of known experience and statistics, it is doubtful whether the insured owner's car, driven either by himself or another, may be considered to be operated more carefully than one whose owner is uninsured. But protection in securing redress for injured highway travelers is a proper subject of police regulation, as well as protection from being injured. It is a reasonable incident of the general welfare that financially irresponsible persons be denied the use of the highway with their cars, regardless of the competency of themselves or others as the drivers.

With this qualification of the reasons for its validity, the advice to the Senate in that opinion that such legislation as was therein considered is in its general scheme constitutional has persuasive force (*Opinion of the Justices*, 84 N. H. 559, 582) to authorize its adoption as declaratory of the law.

Since legislation requiring insurance or other security as a condition of the right to operate a motor vehicle on the highways is valid, the compulsion may be limited to depend upon contingencies.

If from the standpoint of discrimination the distinction as harsh, casual and unfair were admitted, there is error of reasoning in assuming the case to be one of classification. The law from the constitutional viewpoint is not a regulation of a guaranteed right but a definement of the terms of a grant. In *State* v. *Sterrin*, 78 N. H. 220, it was held that the act requiring information to be furnished by an operator of a motor vehicle when injury is caused, although the information is evidence of the operator's criminal liability, is valid. It is said in the opinion (222): " . . . the operation of an automobile upon the public highways is not a right but only a privilege which the state may grant or withhold at pleasure (*Commonwealth* v. *Kingsbury*, 199 Mass. 542); and . . . what the state may withhold, it may grant upon condition. One condition is that the operator must, in case of accident, furnish the demanded information. This condition is binding upon all who accept the privilege. 'The statute confers a privilege which the citizen is at liberty to accept by becoming a licensee, or not, as he pleases. Having accepted the privilege,

he cannot object to any conditions which have been attached thereto by a grantor with power to entirely withhold the privilege.' *State* v. *Corron*, 73 N. H. 434, 445."

So far as classification is here involved, no one is unconstitutionally denied the privilege of the use of the highways with a motor vehicle. The terms and conditions of the privilege are applicable to all who avail themselves of it. They may be unfair and unreasonable, in fact, but they are not invalid. There is equality of treatment. Every licensee takes his license on the condition that if he meets with an accident while operating a car, his further right to operate shall depend upon his having or furnishing security for any liability arising out of the accident or any future accident.

Classification between those who may and who may not have the privilege of highway use of motor vehicles must be reasonable, but the privilege itself need not be; nor does the classification based upon an accident come within the operative effect of the Constitution, since it is one to which the licensee voluntarily consents as a condition of his acceptance of the license. There is no discrimination. All who fail to comply with specified terms suffer specified consequences. Meeting the terms, they avoid the consequences. The terms may be that events and occurrences, as well as conduct, shall provoke the consequences.

Inability to meet the terms may be a misfortune, and so may be inability to become a licensee. Lack of resources to maintain and drive a car and their lack to own a car do not stand differently. What may or may not be afforded is not a matter of constitutional concern in respect to equality and discrimination. Equality of right implies no equality of ability or means.

The legislation is not parallel with the proposed act to establish a judicial tribunal in the executive department of the state government as considered in *Opinion of the Justices*, 87 N. H. 492. The term of the license for such a tribunal was thought to be one which the Constitution forbade to be made. The legislature having no power to create such an institution it could not obtain the power by consent. Here, there is no prohibition against the term, and hence no repugnancy to the Constitution. The term not being a forbidden one, its reasonableness is not a matter of judicial inquiry. "The rule being generally applicable and affecting no private guaranteed rights, the courts are without power to pass upon its wisdom, fairness, or reasonableness." *Coleman* v. *District*, 87 N. H. 465, 471, 472.

By the act, the provision for giving proof of financial responsibility

(*s.* 21) permits a corporation's general credit to be sufficient security if the commissioner is satisfied with it, while an individual's credit may not be. This establishes a classification in which one class of car owners have a privilege denied to others. Whether the distinction may be sustained, is a different inquiry than that whether the terms of the privilege of operating are valid when they apply alike and indifferently to all. But the inquiry does not here demand decision. If the distinction is valid, the plaintiffs suffer no undue discrimination. If it is invalid, the avoidance leaves corporations with the requirement to furnish security on the same basis as individuals. The avoidance of a special provision of a law does not disturb it otherwise, unless an unintended meaning of the law results or unless it cannot be said that its other provisions were intended to remain operative. *Woolf* v. *Fuller*, 87 N. H. 64, 69, and cases cited. The intention of the act is clear that corporations are to fare no better than individuals if the Constitution forbids. The act thus would not be judicially modified. All that would be done would be to hold a special grant void. If the result were to place the grantee on equality with other grantees, it is because the avoidance of the grant necessarily produces the result. The well recognized rule of statutory construction to be employed merely adopts the more probable intention of the legislature that the invalid part shall not produce entire invalidity if the valid part may be reasonably saved. As between a construction that corporations should in no event be required to establish responsibility with a result of holding the entire act invalid, and one that they should not have the exemption if it could not be validly extended, the latter at least more probably declares the legislative intent. The case is thus in contrast with that of *Williams* v. *State*, 81 N. H. 341, in which it was held that the general invalidity of a progressive tax left no part of it valid, since it did not appear that the legislature had contemplated and provided for the contingency of invalidity.

The Rosenblum petition should be dismissed.

The Gorey petition raises the constitutional issue of classification. A lien on the petitioner's truck exists. Registration has been refused in pursuance of the act (Laws 1937, *c.* 208, *s.* 2) which reads: "In the application for the registration of a motor vehicle . . . the owner or person controlling such vehicle shall state whether there is any mortgage or lien upon such vehicle or any sum due upon the purchase price thereof and if the answer is yes said person must furnish proof of financial responsibility . . . before such vehicle may be registered."

The organic principle of equality includes within its application a granted privilege as well as a regulated right. Equality of benefit is no less required than equality of burden. Otherwise equal protection is denied, "Government being instituted for the common benefit, protection, and security, of the whole community, and not for the private interest or emolument of any one man, family, or class of men." (Const., Pt. I, *art.* 10).

The cases recognize this scope of the doctrine of equality. "An act, which operates on the rights or property of only a few individuals, without their consent, is a violation of the equality of privileges guaranteed to every subject." *Merrill* v. *Sherburne*, 1 N. H. 199, 212. "And not only is the ordinance a palpable violation of the equality of privilege and of burden guaranteed by the constitution, but it is . . . a denial to the persons upon whom it operates of the equal protection of the laws, within the meaning of the fourteenth amendment of the federal constitution." *State* v. *Jackman*, 69 N. H. 318, 330. " 'The settled constitutional right of equal privileges and equal protection under general law rests on incontestable grounds of wisdom and necessity'." *Williams* v. *State*, 81 N. H. 341, 352.

If some may, and others may not, enjoy the privilege, the distinction must be one which the public interest permits. Classification creates inequality unless it reasonably promotes a matter of the general welfare. "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." *Gulf &c. Ry* v. *Ellis*, 165 U. S. 150, 165.

Under this test, applicable under the State Constitution (*State* v. *Pennoyer*, 65 N. H. 113; *State* v. *Griffin*, 69 N. H. 1; *Opinion of the Justices*, 85 N. H. 562, 564) as well as the federal, it is difficult to find other than an arbitrary discrimination in the act. The requirement that a motor vehicle must be wholly paid for to entitle it to registration without proof of the owner's financial responsibility in the form required, seems particularly unsupported by any just reason for it. It gives a special force to a special debt when the owner's credit would be equally affected by any other debt of like amount. If the word "for" might be read in place of "or" between "vehicle" and "any sum" in the section, the inequality would still be

manifest. A mortgage or lien for the purchase price would then be invalidly discriminated against in favor of one for a different purpose.

And if the section is directed only towards motor vehicles under mortgage or lien, a common classification for all of them is unreasonable. The mortgage or lien debt may be small or large in proportion to the value of the car. If judicial notice may not be taken of the statement that statistics show the average value of a car in use is less than $300, notice may be taken of the fact that the average car, after being involved in an accident, has far from adequate value to meet liability for an accident of any serious nature. The act, in its demand for security in case of accident, gives but scant strength to the demand by its differentiation between cars owned without encumbrance and cars not thus owned. Moreover, the act applies only to cars encumbered when application for registration is made. The registration of an unencumbered one is thus unaffected if its owner encumbers it as soon as it is licensed. And if a tool of occupation (*Richards* v. *Hubbard*, 59 N. H. 158), the car may be exempt from attachment.

It is all a hit-or-miss proposition. Though plausible on its face, the act appears on analysis to provide no orderly and systematic method of its distributive workings in aid of collectibility. The unencumbered car may have much less value than the equity of the encumbered one. It is true that in a given case the security for the debt may be a substantial prevention of satisfaction for liability for an accident, but proper classification is determined by effective groupings and not by isolated instances.

These invidious contrasts involve so many elements of chance in denial of the privilege to operate that no reasonable basis for the denial can be found. Broadly, one's ability to respond to a liability when there is no indemnity obligation of others for it depends upon his net worth. His ownership interest in a single item of property is conjectural and without practical significance in reflecting such ability.

The moral compulsion to insure may be intensified, but the compulsion is applied with such disregard of reasonable equality and with so slight relation to the object of security that as an instrument forged to be of service for its purpose of securing financial responsibility the method must be adjudged void.

The Gorey petition should be granted.

*Cases discharged.*

All concurred.