D. C. GILLASPIE, INDIVIDUALLY AND AS NEXT FRIEND OF JAMES D. GILLASPIE, A MINOR, V. DEPARTMENT OF PUBLIC SAFETY OF THE STATE OF TEXAS.

No. A-4027. Decided June 17, 1953.
Rehearing overruled July 15, 1953.
(259 S. W. 2d Series 177)

460

*Harrison & Smallwood,* and *Ronald Smallwood,* of San Antonio, for petitioners.

The Court of Civil Appeals erred in upholding the validity of the Texas Motor Vehicle Safety-Responsibility Act because of its contravention of the fifth and fourteenth amendments to the United States Constitution and of Article 1, section 19 of the Texas Constitution. Armstrong v. Taylor, 87 Texas 598, 30 S.W. 440; City of Wink v. Griffith Amusement Co., 129 Texas 40, 100 S. W. 2d 695; Trapp v. Shell Oil Co., 145 Texas 323, 198 S. W. 2d 424.

*John Ben Shepperd,* Attorney General, and *Rudy G. Rice,* assistant Attorney General, for respondent.

Upon the validity of the act in question cited Packard v. Banton, 264 U.S. 140, 44 Sup. Ct. 257; 68 L.Ed. 596; Ballow v. Reeves, 238 S. W. 2d 141; Travellers Insurance Co. v. Marshall, 124 Texas 45, 76 S.W. 2d 1007.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

This suit was filed by petitioner D. C. Gillaspie for himself and as next friend of his minor son, petitioner James D. Gillaspie, against the Department of Public Safety of the State of Texas, to vacate and annul orders of the Department which suspended petitioner D. C. Gillaspie's motor vehicle registration and petitioner James D. Gillaspie's driver's license under the provisions of the Texas Motor Vehicle Safety-Responsibility

Act, being Chapter 498, Acts Regular Session 52nd Legislature, 1951, pp. 1210 and following, Article 6701h, Vernon's Annotated Civil Statutes.

The trial court, holding that the parts of the Act under attack are constitutional, sustained the order suspending the driver's license of petitioner James D. Gillaspie, but reformed it so as to reduce the security required to be deposited from $2181.92 to $1190.00; and set aside the order suspending D. C. Gillaspie's motor vehicle registration on account of its conclusion that he was not responsible for the damages incurred by his minor son, James D. Gillaspie, who at the time of the accident was driving the father's automobile with his permission but not as his agent. On appeal by James D. Gillaspie and the Department of Public Safety the Court of Civil Appeals affirmed the trial court's judgment as to James D. Gillaspie and reversed the judgment which had set aside the suspension of D. C. Gillaspie's motor vehicle registration. 254 S. W. 2d 180.

Application for writ of error by D. C. Gillaspie was granted under the erroneous belief that the Department's order affirmed by the Court of Civil Appeals suspended D. C. Gillaspie's driver's license as well as his motor vehicle registration. That order, apparently by reason of the use of a form applicable to an owner of an automobile who was operating it at the time of an accident, contains recitals referring to suspension of "driver's license and all motor vehicle registrations", with directions to surrender driver's licenses and registration certificates, but the effective part of the order is that unless the required security is deposited "all your Texas Motor Vehicle Registration Certificates and plates are hereby suspended as of April 2, 1952." We construe the Department's order and its affirmance by the Court of Civil Appeals to suspend D. C. Gillaspie's motor vehicle registration and not his driver's license. Thus construed the order conforms to the authority given by Section 5(b) of the Act to suspend "the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident."

By several points in the two applications for writ of error the constitutionality of certain parts of the Act is questioned as denying due process. Before considering separately the several points it is advisable for a better understanding of them to look briefly to the general nature and purpose of the Act, and then to the several provisions that have bearing on peti-

tioners' points. The name of the Act, Texas Motor Vehicle Safety-Responsibility Act, is generally descriptive of its purpose, which is more fully stated in the caption and in the emergency clause. The first part of the caption describes the Act as "An Act to encourage safer use of motor vehicles on the streets and highways of Texas and to deny the privilege of driving to reckless and financially irresponsible persons by requiring security of owners and operators of motor vehicles following accidents and by providing for proof of financial responsibility for the future." The emergency clause is as follows:

"The fact that thousands of motor vehicles are being operated on the highways of Texas by financially irresponsible owners and drivers who are causing untold loss of life and property and who are failing to pay for the damages thus caused, and the further fact that it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorists, thereby benefiting all the citizens of this State, constitutes an emergency, etc."

■ The Act is not one requiring liability insurance or other security as a condition to obtaining a license or permit to use the public highways, but it undertakes to accomplish its declared purposes by requiring the depositing of security after accidents under the penalty of suspension of driver's license and registration certificate. The opinion, apparently well supported by the facts, has been expressed that the enactment of the law in Texas has induced a greater number of motor vehicle owners to procure liability insurance, and that it has tended at least to encourage safer use of motor vehicles on the streets and highways. Substantially the same or similar laws have been enacted in many of the states, and they have generally been sustained as against various constitutional objections. See Note 125 A.L.R., pp. 1459, 1460; Note 10 A.L.R. (2d) pp. 833, 834, 842; and authorities hereinafter cited.

The substance of parts of the Act relevant to the points presented by petitioner is as follows:

Administration and enforcement of the Act are given to the Department of Public Safety, which is authorized to make necessary rules and regulations for its administration, and required to provide hearings upon request of persons aggrieved by its orders or acts. Section 2(a). Any order or act of the Department is subject to judicial review by appeal to the county court at law, to the county court if there be no county court

at law, or to the district court if there be no county court having jurisdicion. The court shall determine whether the filing of the appeal shall operate to stay the order or decision of the Department. The court may modify, affirm or reverse the order or decision of the Department in whole or in part. Section 2(b). Trial in the court "shall be de novo, with the burden of proof upon the Department, and the substantial evidence rule shall not be invoked or apply." Trial by jury may be had upon proper application. Section 2(c).

The operator of every motor vehicle in any manner involved in an accident in which any person is killed or injured, or in which damage to property of any one person in excess of $100.00 is sustained, shall within ten days after the accident report it in writing to the Department. Forms for the report are prescribed by the Department. Section 4. If twenty days after receipt of the report the Department does not have on file evidence satisfactory to it that the person who would otherwise be required to file security under Subsection (b) of Section 5 has been released from liability or has been finally adjudicated not to be liable, or has executed a duly acknowledged written agreement for the payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the Department shall determine the amount of security which shall be sufficient in its judgment to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against each operator or owner. Section 5(a).

The Department shall within sixty days after the receipt of the report of a motor vehicle accident suspend the license of each operator and all registrations of each owner of a motor vehicle in any way involved in the accident, unless the operator or owner or both shall deposit security in the sum so determined by the Department. Notice of such suspension shall be sent to the operator and the owner not less than ten days prior to the effective date of the suspension, and shall state the amount required as security. Section 5(b).

The provisions of Section 5 for fixing the amount of security and for suspension and notice shall not apply in these instances: To the owner or operator if he had in effect at the time of the accident a motor vehicle liability policy as defined in the Act; to any person who has qualified as a self-insurer under Section 34 of the Act; to the operator or owner of a motor vehicle in-

volved in the accident wherein no injury or damage was caused to the person or property of anyone other than such operator or owner; to the operator or owner of a motor vehicle legally parked at the time of the accident; to the owner, if the vehicle was being operated without his permissoin; if prior to the date that the Department would otherwise suspend the license and registration satisfactory evidence shall be filed with the Department that the person who otherwise would have to file security has been released from liability or finally adjudicated not to be liable, or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments with respect to all claims for damages or injuries. Section 5(c), Section 6.

The license and registration suspended as provided in Section 5 shall remain so suspended and shall not be renewed until security has been deposited as required under Section 5 or one year shall have elapsed following the date of the accident and satisfactory evidence has been filed that during that period no action for damages has been instituted, or satisfactory evidence has been filed of a release from liability or a final adjudication of nonliability or a written agreement providing for payment in installments. Section 7. Other sections of the Act provide that the security required to be deposited shall be in such form as the Department may require, but not to be in excess of the limits specified in Section 5 in reference to the acceptable limits of a policy, and that the Department may within six months from the date of the accident reduce the amount of security if in its judgment the amount ordered is excessive, and set out in detail the kind and extent of motor vehicle liability policies that may serve as security. Sections 9, 5, 21.

The Act provides that if an owner's registration is suspended the registration shall not be transferred and the motor vehicle for which the registration was procured shall not be registered in any other name until the Department is satisfied that the transfer of registration is proposed in good faith and not for the purpose of evading or defeating the provisions of the Act. Section 30.

We agree with the Court of Civil Appeals in its decision that the Act does not authorize the Department to determine questions of liability or fault on the part of the persons involved in an accident before fixing the amount of security required and suspending the license of operators and the registration of own-

ers. According to the terms of Section 5, Subdivisions (a) and (b), it is the duty of the Department to determine the amount of security and to suspend the licenses and registrations of operators and owners involved in the accident without undertaking to ascertain who was at fault or who may be liable for damages. Questions of liability or fault are for the courts to determine in suits brought for that purpose. As said by the Court of Civil Appeals, the Act "undertakes to require security so that in the event fault is later established in a suit instituted for that purpose, the wronged party will not have an empty judgment." 254 S. W. 2d 180, 181. It follows that the trial court was in error in setting aside the order suspending D. C. Gillaspie's registration on the ground that the evidence showed he was not liable for the damages caused by his minor son.

Points of error in both applications present the contention that the Act in authorizing suspension of licenses and registrations without first a determination of the question of liability violates constitutional guaranties of due process and equal protection of the law.

■ Fundamental in the consideration of this contention and other points attacking the constitutionality of the Act is the settled principle that a license or permit to drive an automobile on the public highways and streets is a privilege and not property or a property right. The privilege is subject to reasonable regulations under the police power in the interest of public safety and welfare, and such reasonable regulations of the privilege made in that interest, may properly be committed to an administrative body or agency for enforcement, especially when judicial review is provided; and such regulations are not regarded as in denial of due process. Taylor v. State, 151 Texas Criminal Rep., 568, 209 S. W. 2d 191; Reitz v. Mealey, 314 U. S. 33, 62 Sup. Ct. 24, 86 L. Ed. 21; Prichard v. Battle, 178 Va. 455, 17 S. E. 2d 393; Ballow v. Reeves, 238 S. W. 2d 141; State v. Stehlek, 262 Wis. 642, 646, 56 N. W. 2d 514; Larr v. Dignan, 317 Mich. 121, 26 N. W. 2d 872; Heart v. Fletcher, N. Y. Sup. Ct. 53 N.Y.S. 2d 369; Jones v. Marsh, 148 Texas 362, 367, 224 S. W. 2d 198.

Courts of other states have sustained the constitutionality of the same statute or a similar statute against the same attack as that under consideration here. Rosenblum v. Griffin, 89 N. H. 314, 197 Atl. 701, 704, 115 A.L.R. 1367, a carefully considered decision, held valid the part of a statute authorizing suspension

of license without a finding a liability or fault. The court, while recognizing the fact that it may with reason be thought unjust that an operator should lose his license unless he was actually at fault, said that there is, however, equality between such an operator and all others meeting with accidents for which they are not liable, and that though the act produces hardship, "it establishes conditions which are definite and conclusive in meeting the need of prompt action." In sustaining the law the court said further. "But protection in securing redress for injured highway travelers is a proper subject of a police regulation, as well as protection from being injured. It is a reasonable incident of the general welfare that financially irresponsible persons be denied the use of the highway with their cars, regardless of the competency of themselves or others as the drivers." For other authorities holding like statutes not invalid for failing to require proof of negligence prior to suspension, see Ballow v. Reeves, 238 S. W. 2d 141; Larr v. Dignan, 317 Mich. 121, 26 N. W. 2d 872; Doyle v. Kahl, 242 Iowa 153, 46 N. W. 2d 52.

■ Suspension of driver's license or registration is not the taking of property. It deprives the operator or owner for a limited time and on reasonable conditions of the privilege of driving or operating the motor vehicle on the public highways. The suspension is not for longer than a year if no action for damages is instituted. It can be terminated by depositing security, by procuring a release from liability, or by filing written agreement providing for payment in installments. Inconvenience is imposed upon the operator who is not at fault, but it is so imposed in the interest of prompt action for the accomplishment of the purposes of the Act in the exercise of the police power.

"It seems clear the legislature may require, as a condition to the right of operating a motor vehicle, the procurement of insurance or the furnishing of other proof of financial responsibility. See In re Opinion of the Justices, 251 Mass. 569, 147 N. E. 681.

"If the legislature may require proof of financial responsibility in advance of the issuance of a license, there seems to be no valid reason why it could not require the same thing of an operator who had been involved in an accident, as the condition upon which he will be permitted to retain his license." Ballow v. Reeves, 238 S. W. 2d 141, 142.

■ It is argued by petitioners that the suspension of an owner's

registration certificate under the provisions of the Act has the effect of depriving him of the right to sell or mortgage the automobile while the suspension is in effect, in that Section 30 forbids the transfer of registration and the registration of the automobile in any other name, and Articles 1434 and 1435 of the Penal Code as amended by Chapter 364, Acts Regular Session, 50th Legislature, require that on the sale of a used automobile the certificate of registration be transferred to the purchaser and the certificate of title and registration certificate delivered to the purchaser for registration in his name. The contention is that such a denial to the owner of the right to sell or mortgage his automobile is a taking of his property.

The language of Section 30 is: "If the owner's registration has been suspended hereunder, such registration shall not be transferred nor the motor vehicle in respect of which such registration was issued registered in any other name *until the Department is satisfied that such transfer of registration is proposed in good faith and not for the purpose or with the effect of defeating the purposes of this Act.*" (Emphasis added.) It is apparent from the language used that the purpose of the section is to prevent evasion of the law by transfer and registration in the name of another during the period of suspension. As owner whose certificate of registration has been suspended and who in good faith wishes to sell or mortgage the automobile may, on application to the Department with a showing of good faith, cause the suspension order to be lifted so as to permit the transfer and registration in the name of the purchaser or mortgagee to be accomplished. The provisions of Section 30 are, in our opinion, reasonable regulations in furtherance of the purposes of the Act, and do not authorize or permit the taking of property without due process.

■ There is no denial of due process in the Department's fixing the amount of security and ordering suspension of J. D. Gillaspie's driver's license and D. C. Gillaspie's registration certificate prior to a hearing. The Act does not require hearing before suspension, although it is provided in Section 2(a) that the Department shall provide for hearings upon request of persons aggrieved by its orders or acts. It is not shown by the record that petitioners requested a hearing. Since the driver's license and the registration represent privileges and not property rights, regulation of them, their issuance, suspension or cancellation may be committed to an administrative body or agency. And it is generally held that suspension of license prior to hearing

but subject to judicial review does not violate due process. Escobedo v. State Department of Motor Vehicles, 35 Cal. 2d 870, 222 Pac. 2d 1; Doyle v. Kahl, 242 Iowa 153, 46 N. W. 2d 52; Commonwealth v. Cronin, 336 Pa. 469, 9 Atl. 2d 408, 125 A.L.R. 1455; Ballow v. Reeves, 238 S. W. 2d 141; Bourjois v. Chapman, 301 U. S. 183, 57 Sup. Ct. 691; 81 L. Ed. 1027; 12 Amer. Jur. p. 307, Sec. 612; 16 C. J. S., pp. 1287-1289, Sec. 629. Due process and protection against abuse of administrative authority are further assured when the statute provides that the complaining party may have a stay until final decision. Porter v. Investors Syndicate, 286 U. S. 461, 52 Sup. Ct. 617, 76 L. Ed. 1226, 1232.

Subdivisions (b) and (c) of Section 2 of the Act provide that any order or act of the Department may be subject to review by appeal to court, that the trial in court shall be de novo, and the substantial evidence rule shall not be invoked or apply, but that the trial shall be without regard to any prior holding of fact or law by the Department, and that a trial by jury may be had. Subdivision (b) of Section 2 further provides that the court shall determine whether the filing and the appeal shall operate as a stay of the order or decision of the Department. In the instant case the county court at law, on the day the petitioners' suit was filed appealing from the Department's orders of suspension, made an order staying both orders of suspension "pending final determination of this cause on its merits, or until further order of this court."

The parts of the Act attacked by petitioners and the procedure under them do not in our opinion deny the equal protection of the law. Rosenblum v. Griffin, 89 N. H. 314, 197 Atl. 701, 115 A.L.R. 1367; Surtman v. Secretary of State, 309 Mich. 270, 15 N. W. 2d 471.

■ By another point the Act is attacked as invalid on account of delegating to the Department authority to determine the amount of security required to be deposited without prescribing a standard to govern the Department in making the finding. Subdivision (a) of Section 5 authorizes the Department "to determine the amount of security which shall be sufficient in its judgment to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each operator or owner." In our opinion the Court of Civil Appeals correctly held that the established principles and rules governing the recovery of judgments for damages are matters of

public knowledge and provide a reasonable and sufficiently certain standard for the Department, and further that protection against unreasonable action by the Department in fixing the amount of security is given by the provisions of the Act for appeal and trial de novo. 254 S. W. 2d 183. Escobedo v. State Department of Motor Vehicles, 35 Cal. 2d 870, 222 Pac. 2d 1, 6.

■ Finally, petitioner D. C. Gillaspie contends that the cause should in any event be remanded to the trial court to permit him to contest the finding of $1190.00 as the amount of security to be deposited. He takes the position that he has not had the opportunity to be heard on that question because the trial court set aside the Department's order suspending his certificate of registration and he was not required to except to the finding as to the amount of security and could not complain of it on appeal.

We find no merit in the contention. In cases where the owner and operator are different persons the amount of security to be deposited by the owner will necessarily be the same as that to be deposited by the operator. One suit was filed by petitioners. It was tried as one case, and in the county court at law, in the Court of Civil Appeals and here both petitioners have been represented by the same attorneys. Witnesses called to testify by the Department as to the amount of damages incurred by the others involved in the accident were cross-examined by the attorneys for the two plaintiffs, the petitioners here. D. C. Gillaspie, through his attorneys representing both him and James D. Gillaspie, had full opportunity to develop the facts as to the amount of security that should be required. James D. Gillaspie through the same attorneys unsuccessfully attacked in the Court of Civil Appeals as not supported by the evidence the trial court's finding of $1190.00 as the amount of security required. That finding has support in the evidence.

The judgment of the Court of Civil Appeals is affirmed. Petitioners shall have twenty days after this Court's judgment has become final in which to comply with the Department's suspension orders.

Opinion delivered June 17, 1953.

Rehearing overruled July 15, 1953.

Certiorari to Supreme Court of United States denied, 347 U. S. 933 (4), 74 Sup. Ct. 625 (5).