

# THE ATTORNEY GENERAL
## OF TEXAS

November 23, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Juan J. Hinojosa
Chairman
Criminal Jurisprudence
   Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No. JM-826

Re:   Constitutionality of statute requiring out-of-state motorists, including aliens, to comply with Texas liability coverage requirement (RQ-1271)

Dear Representative Hinojosa:

You ask about the constitutionality of a recent amendment to the Texas Motor Vehicle Safety-Responsibility Act, article 6701h, V.T.C.S.  The Safety-Responsibility Act, among other things, generally forbids the operation of most motor vehicles in Texas unless an automobile liability insurance policy, in a certain minimum amount, is available to "provide evidence of financial responsibility . . . to insure against potential losses which may arise out of the operation of that vehicle." V.T.C.S. art. 6701h, §1A.

Prior to a recent amendment to the Safety-Responsibility Law, see Acts 1987, 70th Legislature, chapter 289, section 1, at page 3252, vehicles that were both registered to and operated by non-resident drivers (unless primarily operated in Texas) were exempt from the general requirement that adequate automobile liability insurance be maintained in order to operate the vehicle in Texas.  Id. Now, vehicles operated by both residents and non-residents alike must be covered by liability insurance, or otherwise satisfy the requirements of the Safety-Responsibility Act, whenever they are operated in Texas.  Thus, any vehicle, with only a few exceptions, driven into, or through, Texas is subject to the strictures of the Safety-Responsibility Act.  Again, in most cases, this means vehicles registered to and operated by non-residents in Texas must be covered by adequate automobile liability insurance policies.

You are concerned that the removal of the general exemption from the mandatory liability insurance requirement for vehicles operated in Texas by non-residents may be an impermissible burden on foreign or interstate commerce, and thus violate the United States Constitution. U.S. Const. art. I, §8, cl. 3. You note that removal of the exemption from the requirements of the Safety-Responsibility Act for non-resident operators will require operators driving vehicles into or through Texas, even on the most casual basis -- such as tourists on a brief excursion into the state from a neighboring state or from Mexico[1] -- to have automobile liability insurance of the kind required by the Safety-Responsibility Act. You note that the imposition of a mandatory liability insurance requirement may make it more expensive for interstate and foreign commerce to move into and through Texas. We can, in fact assume that some non-residents will refrain from entering into Texas to engage in interstate or foreign commerce, because they are either unable or unwilling to obtain the necessary automobile liability insurance.[2] In short, enforcement of the Safety- Responsibility Act will burden interstate and foreign commerce to some as yet unforeseen degree.

However, the application of the Safety-Responsibility Act to all vehicles operated on the highways of Texas, whether by a resident or a non-resident, cannot be considered to be an <u>unconstitutional</u> burden on foreign and interstate commerce. We are confident that the amendment requiring non-resident motorists to comply with the Act is a legitimate exercise of the state's police power, <u>even though the application of the law to non-resident motorists may to some extent prevent the flow of interstate and foreign commerce into or through the state</u>.

---

1. We do not believe that the Safety-Responsibility Act reasonably can be conceived as an attempt by Texas to regulate <u>immigration</u> from a foreign country, a power which belongs exclusively to the federal government. <u>Oceanic Steam Navigation Co. v. Stranahan</u>, 214 U.S. 320 (1909).

2. We understand that the State Board of Insurance is readying plans to assure that liability insurance, on a short-term basis, will be available at affordable rates for visitors.

The operation of a motor  vehicle on the highways  of Texas is  a privilege  subject to  regulation  under  the state's police power to  protect legitimate public  inter-ests. Gillaspie v. Department of Public Safety, 259 S.W.2d 177 (Tex. 1953), cert. denied 347 U.S. 933  (1954); Texas Department of Public Safety v. Richardson, 384 S.W.2d 128 (Tex. 1964). See also D.C. Hall Co. v. State Highway Comm'n, 330 S.W.2d 904  (Tex. Civ. App. - El  Paso 1959, writ ref'd n.r.e.) cert. denied 364 U.S. 901 (1960). The sole purpose  of the Safety-Responsibility  Act is  to "encourage safer use of motor vehicles on the streets  and highways of Texas and to deny the privilege of driving  to reckless and  financially  irresponsible  persons."  Acts 1951, 52nd Leg., ch. 498, at 1210.

So long  as Congress  has not  acted to  preempt  the field, the state may  enact uniform legislation  necessary to protect the  public, and  such rules can  apply to  all motor vehicles operating on the state's highways,  whether in  interstate  or  intrastate  commerce.  Regulations affecting foreign commerce  must be examined  on the  same grounds as  those  affecting  interstate  commerce.  See, e.g., United States v. Carolene Products Co., 304 U.S. 144 (1938).  The Safety-Responsibility Act is clearly designed to promote the public  interest of requiring operators  of vehicles Texas on highways to take responsibility for  any damage they may cause. State v. United Bonding Ins. Co., 450 S.W.2d 689 (Tex. Civ. App. - Austin 1970, no writ).

The legitimate exercise of  the state's police  power represented by the Safety-Responsibility Act does impose a burden on interstate and  foreign commerce conducted  into and through Texas. The federal government, of course, may preempt the exercise  of state police  powers that  affect interstate and foreign commerce. We are aware of  neither a federal statute nor a treaty which preempts the field of state-mandated automobile insurance.[3]  But in the  absence

---

3.  The United  States has  entered  into no  bilateral agreements with  Mexico  concerning reciprocal  automobile insurance  or  indemnity  requirements.  See generally, United States  Department  of  State, Treaties  in Force (1987).  We  express  no  opinion  concerning  the applicability, if any,  of the  provisions of the  General Agreement  on  Tariffs  and  Trade, TIAS  1700,  to  your concern.

of such explicit preemption, a state may impose on vehicles using its highways in interstate and foreign commerce nondiscriminatory regulations to protect the public. Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520 (1959).

A state's regulation of its highways for the safety and convenience of the public will carry with it a strong presumption of validity. Id. The exercise of the police power genuinely designed to protect a legitimate public interest in safe and convenient highway travel, so long as it is untainted by impermissible motives, such as a disguised desire to promote local economic interests at the expense of interstate and foreign commerce, see, e.g., Buck v. Kuykendall, 267 U.S. 307 (1925), appears always to be found constitutional:

> Few subjects of state regulation are so peculiarly of local concern as is the use of state highways. There are few, local regulation of which are so inseparable from a substantial effect on interstate commerce. . . . The state has a primary and immediate concern in the safe and economical administration [of state highways]. [R]egulations . . ., if they are to accomplish their end, must be applied alike to interstate and intrastate traffic moving in large volume over the highways. The fact that they affect alike . . . interstate and intrastate commerce . . . is a safeguard against their abuse.

South Carolina Highway Department v. Barnwell Brothers, Inc., 303 U.S. 177, 187 (1938).[4]

---

4. Of course, the state may not violate other constitutional safeguards in pursuing efforts to protect the public welfare on the highways. See Attorney General Opinion JM-546 (1986) (post-accident impoundment provisions of section 4A of the Safety-Responsibility Act applicable to motorists not domiciled in United States unconstitutional deprivation of property without due process of law.)

Stated somewhat differently, a state's <u>police power</u> regulation affecting interstate and foreign commerce on its highways will be found to be valid unless that regulation can be found to be either a completely irrational attempt to address a legitimate state interest, or exercised only as a pretext in pursuit of an illegitimate end. <u>See, e.g.</u>, <u>Southern Pac. Co. v. State of Arizona</u>, 325 U.S. 761 (1945). Thus, a state regulation adopted for some purpose within its legitimate powers to promote the safe use of its highways will be permitted, even when the regulation has the potential for stopping the flow of motor vehicles from another state or from a foreign country, such as Mexico. <u>Buck v. People of State of California</u>, 343 U.S. 99 (1951) (regulations, including fee, for license on taxicabs going to and from Mexico held not to be an unconstitutional burden on foreign commerce).[5]

Of course, the balance between the constitutional values protecting the free flow of interstate and foreign commerce and the state's interest in protecting the well-being of its citizens must be determined with reference to the facts unique to each potential conflict. <u>Bibb v. Navajo Freight Lines, Inc.</u>, <u>supra</u>; <u>Southern Pac. Co. v. State of Arizona</u>, <u>supra</u>. Some local regulations, which are otherwise permissible exercises of a state's police powers, may be found to be so burdensome on interstate commerce or so illusory in their true contributions to the public safety and welfare of a state that they will not be permitted to stand. The concepts of mandatory automobile liability insurance or financial responsibility laws are hardly novel ones; in fact, it may be likely that most vehicles driven into or through Texas in the course of a journey in interstate or foreign commerce are operated or owned by those which are either familar with such concepts or from jurisdictions who have adopted such

---

5. The constitutional right to free interstate movement is subject to reasonable regulation by a state. <u>Shapiro v. Thompson</u>, 394 U.S. 618 (1969); <u>see also</u> <u>Edwards v. California</u>, 314 U.S. 160 (1941), <u>per</u> concurring opinion of the Justice Jackson (there is no right to interstate travel free from restrictions against causing harm to others). <u>See generally</u> Annot. Federal Constitutional Right of Interstate Travel -- Supreme Court Cases. 27 L. Ed. 2d 862 (1970).

principles.[6] While we understand that the Department of Public Safety, which is responsible for administering the Safety- Responsibility Act, has not yet issued regulations which provide in detail for the application of the law to non-resident motorists or their insurers, we think it extremely unlikely that the courts will find unconstitutional the non-discriminatory requirement that all vehicles operated in the state meet the requirements imposed by Texas to protect those who use its highways from the depredations of drivers otherwise unable to compensate others for the harm they cause.

## S U M M A R Y

The Commerce Clause, United States Constitution, article I, section 8, clause 3, does not forbid Texas from requiring all vehicles using the highways of the state to comply with the mandatory liability insurance requirements of the Motor Vehicle Safety-Responsibility Act, article 6701h, V.T.C.S. The Act is a permissible exercise of the state's police powers to regulate its highways to protect the public welfare. Congress may preempt the application of the Safety-Responsibility Act to vehicles operated in interstate or foreign commerce.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

---

6. We understand, for example, that evidence exists to suggest that many of those motorists from Mexico involved in accidents in Texas have liability insurance which is valid here.

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General