Hillsborough-northern judicial district
No. 2002-044

PROGRESSIVE NORTHERN INSURANCE COMPANY

v.

ENTERPRISE RENT-A-CAR COMPANY OF BOSTON, INC.

Argued: January 8, 2003
Opinion Issued: May 9, 2003

*Wiggin & Nourie, PA*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Doreen F. Connor* on the brief, and *Mr. Rehnborg* orally), for the plaintiff.

*Brian T. McDonough, P.A.*, of Manchester (*Debra L. Mayotte* on the brief and orally), for the defendant.

BRODERICK, J. The plaintiff, Progressive Northern Insurance Company (Progressive), appeals from the Superior Court's (*Brennan*, J.) order granting summary judgment for the defendant, Enterprise Rent-A-Car Company of Boston, Inc. (Enterprise). Progressive sought a declaratory judgment that Enterprise has the legal obligation to provide primary protection, pursuant to the Financial Responsibility Act, for all New Hampshire accidents involving its fleet of rental vehicles. *See* RSA ch. 264 (1993 & Supp. 2002). The court ruled in favor of Enterprise. We affirm.

The facts are not in dispute. This case arose from two separate car accidents occurring in 1999 and 2000. In each incident, the driver alleged to be responsible for the accident was operating a car rented from Enterprise and maintained a personal automobile insurance policy with Progressive. The drivers were sued for damages arising out of the accidents. Progressive acknowledges that its policies provide insurance to the drivers in connection with these accidents, although the policies provide that its coverage is excess when its insured is involved in an accident while occupying a vehicle not owned by the insured. Enterprise

maintains that it owes no duty to defend or indemnify its lessees. Enterprise is self-insured for two million dollars.

The parties agree that sections 3 and 20 of RSA chapter 264, the Financial Responsibility Act, govern the outcome of this case. Progressive's position is that the statutory provisions require that Enterprise demonstrate an ability to pay *and* actually make payment to any person injured by the negligent operation of its rental vehicles. Enterprise's position is that the statute applies equally to drivers and owners and that payment is tied to liability incurred.

"This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Dionne v. City of Manchester*, 134 N.H. 225, 227 (1991) (quotations and brackets omitted). "[L]egislative intent is to be found not in what the legislature might have intended, but rather, in the meaning of what it did say." *Id.* (quotation omitted).

"New Hampshire does not require every motor vehicle to be insured, or even, in some cases, proof of financial responsibility prior to the operation of a vehicle." *Coltey v. N.E. Telephone*, 135 N.H. 223, 224 (1991). However, following a reported accident, RSA 264:3 (1993) requires that the "driver or owner or both" furnish "sufficient security to satisfy any judgment . . . for damages resulting from such accident *as may be recovered against such owner or driver*." RSA 264:3, I (emphasis added). The amount of proof of financial security required is $25,000 due to death or injury to one person, $50,000 due to death or injury to two or more persons, and $25,000 due to property damage. RSA 264:20 (1993). As RSA 264:20 states, proof of financial responsibility "shall mean *proof of ability to respond in damages for any liability thereafter incurred*, as a result of accidents . . . arising out of the ownership, maintenance, control, or use of a motor vehicle." (Emphasis added.)

Failure to comply with the statute results in the suspension of the driver's license and registration certificate and the surrender of registration plates and suspension of the owner's registration certificates, plates and license. RSA 264:3, I. The statute does not apply if: (1) the owner or driver has in effect with respect to the vehicle involved in the accident a motor vehicle liability insurance policy; (2) the driver, if not the owner of the vehicle, has a motor vehicle liability policy with respect to his driving of vehicles not owned by him; or (3) the owner or driver has satisfied the director of motor vehicles that the liability of such owner or driver for the damages resulting from such accident is covered by proof of financial responsibility. RSA 264:3, II (a)-(c).

Progressive argues that pursuant to the Financial Responsibility Act, Enterprise, as the owner of the vehicles, has the legal obligation to provide

primary protection. Progressive cites *Universal Underwriters Insurance Co. v. Allstate Insurance Co.*, 134 N.H. 315 (1991), and *Liberty Mutual Insurance Co. v. Home Insurance Indemnity Co.*, 116 N.H. 12 (1976), for support. These cases, however, are based on an interpretation of conflicting provisions in the parties' insurance policies and provide little guidance on the issues before us. In both *Universal* and *Liberty*, resolution of the question whether an owner's insurance is primary when the driver's negligence caused the accident or whether the owner's or driver's policy is primary depended upon an interpretation of the applicable contracts. Here, the only insurance contract is that between the drivers and Progressive. This is not a case of conflict between general excess coverage clauses.

According to Progressive, this court's holding in *Rosenblum v. Griffin*, 89 N.H. 314 (1938), mandates that "if and when Enterprise automobiles are involved in automobile accidents causing damages, Enterprise, since it has chosen ... to carry no liability insurance, must forfeit its right to register its rental fleet and it must forfeit its motor vehicle plates, unless and until it agrees to pay the damages caused by the use of its automobiles upon the New Hampshire roadways — the damages which Enterprise has failed and refused to pay in these two cases." This statement, however, is based on a misreading of both *Rosenblum* and the Financial Responsibility Act.

In *Rosenblum*, truck A collided with truck B and the accident was alleged to be the fault of truck B. Truck A's owner carried no liability insurance and was otherwise unable to prove financial responsibility and therefore lost his registration and license. Regardless of the fact that he was not at fault, the court held that truck A's owner still had to establish financial responsibility "to meet [his] possible liability for damages arising from accidents occurring while [his] vehicles [were] being operated." *Rosenblum*, 89 N.H. at 315. *Rosenblum* does not establish that truck A's owner had to pay the statutory financial responsibility amounts, but, rather, that he had to show that he could pay if he were found liable.

New Hampshire law does not require Enterprise to carry liability insurance. *Coltey*, 135 N.H. at 224. Enterprise has complied with the financial responsibility statute by "satisfying the director that [it] has financial ability to comply with the requirements of [the] chapter." RSA 264:21, III (1993). Furthermore, there are no claims that Enterprise caused the accidents at issue in this case. The claims are that the accidents were the fault of the drivers.

▮ The purpose of the Financial Responsibility Act is to provide compensation for persons harmed by the negligent operation of motor

vehicles in this State. "The paramount purpose of the [Act] is not to protect the tort-feasor, but to provide compensation to persons harmed by the negligent operation of motor vehicles." *Peerless Ins. Co. v. Vigue,* 115 N.H. 492, 494 (1975). The law is intended to induce, but not to compel, motor vehicle operators to provide security to persons injured by their negligence. *American Mut. &c Ins. Co. v. Company,* 87 N.H. 374, 376 (1935).

■ We cannot conclude that under the plain language of the statute, the owner of an automobile must provide primary financial responsibility protection for the benefit of the driver. As RSA 264:3 simply states, the owner or driver must furnish sufficient security to satisfy any judgment for damages resulting from the accident as may be recovered against the owner or driver. Payment for damages resulting from an accident depends on "liability thereafter incurred." RSA 264:20. Progressive proceeds on the erroneous assumption that by virtue of its status as a self-insurer, Enterprise has assumed all of the obligations which arise under a policy of insurance. Enterprise's responsibility, however, is one imposed by statute. Nothing in the statute requires that the guarantee by a self-insurer to pay any judgment against it be construed to operate for the benefit of the negligent driver.

Because the issue decided today relates to the meaning and interpretation of the State's Financial Responsibility Act in the rental car context and because the dissent cogently identifies a contrary view, we respectfully suggest that the legislature closely examine the intended reach of the Act. Some States have crafted statutory provisions that specifically address the questions raised in this case. *See, e.g.,* Utah Code Ann. § 41-12a-401, 407(2) (1998); *Chambers v. Agency Rent-A-Car, Inc.,* 878 P.2d 1164, 1165-67 (Utah Ct. App. 1994).

*Affirmed.*

BROCK, C.J., and DALIANIS, J., concurred; DUGGAN, J., with whom NADEAU, J., joined, dissented.

DUGGAN, J., dissenting. Because I believe that RSA chapter 264 (1993 & Supp. 2002) requires Enterprise to provide primary financial responsibility act (FRA) coverage for accidents caused by the use of its fleet of cars, I respectfully dissent.

RSA chapter 264 is New Hampshire's version of the financial responsibility statute passed by many States. *See* 6B J. & J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4295, at 238 (Buckley ed. 1979). The purpose of these statutes is to ensure financial compensation for injuries and damages resulting from the faulty operation of motor vehicles. *Id.;*

*Peerless Ins. Co. v. Vigue*, 115 N.H. 492, 494 (1975). Some financial responsibility acts make omnibus insurance policies a mandatory condition of registering a vehicle. APPLEMAN, *supra* § 4299, at 300-01. Others require vehicle owners, in the event of an accident, to demonstrate some form of financial coverage, usually an insurance policy, which will cover injuries and property damage occasioned by the use of their vehicles. *Id.* at 302. In either case, FRA obligations are not necessarily related to the respective legal fault of the parties. *See Rosenblum v. Griffin*, 89 N.H. 314, 316-17 (1938). Thus, in cases involving borrowed or rented vehicles, the owner's insurer may be liable for damages, even when the driver's negligence caused the accident. *See, e.g., Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 134 N.H. 315, 316-18 (1991); *Forester v. Jerman*, 90 F.2d 412, 413-14 (D.C. 1937); *Globe Indem. Co. v. Universal Underwriters Ins. Co.*, 20 Cal. Rptr. 73, 75-76 (Dist. Ct. App. 1962); 15 L. RUSS & T. SEGALLA, COUCH ON INSURANCE 3D § 219.48 (rev. ed. 1999).

New Hampshire's FRA imposes post-accident requirements on *both* the owner and the driver of the vehicle, but does not require mandatory insurance. The parties agree that RSA 264:3 (1993) and RSA 264:20 (1993) govern the responsibilities of the drivers and owner in this case. The statutes provide two ways for an owner to comply with the FRA following an accident. The owner may follow the requirements of RSA 264:3, I (1993). Alternatively, it may argue that it falls under one of three exemptions in RSA 264:3, II(a)-(c) (1993). In this case, Enterprise argues that its status as a self-insured qualifies it under RSA 264:3, II(c), which allows an exemption when an owner can demonstrate it is "covered by . . . proof of financial responsibility in accordance with RSA 264:20 and 21."

Up to this point, I do not understand my interpretation of the FRA as it relates to this case to differ from that of today's decision. The majority, however, goes on to conclude that Enterprise has met its obligation under RSA 264:3, II(c), 264:20 and 264:21 (1993) merely by demonstrating its ability to pay FRA damages, and need not actually provide damages unless found liable for the accident.

By the plain wording of RSA 264:3, II(c) and 264:20, the owner must have already established the ability to "respond in damages for *any* liability thereafter incurred . . . arising out of the ownership, maintenance, control, *or use*" of its vehicle, up to the statutory limits. RSA 264:20 (emphasis added). Assuming that Enterprise met this requirement of pre-existing coverage, RSA 264:3, II(c), it must now "respond in damages" for the present accidents. RSA 264:20. Similarly, if RSA 264:3, I, applied to this case, Enterprise, as the owner, would be required to provide security for "*any* judgment for damages" that may be recovered against the owner *or* against the driver. RSA 264:3, I. The statutes make no distinction

between liability occasioned by the fault of the owner and liability occasioned by the fault of the driver.

Had the legislature wished to exempt owners from providing coverage for accidents that were not their fault, it could have done so in RSA 264:6, I (1993). This statute provides that:

I. The provisions of RSA 264:3 shall not apply:

(a) To the owner of a vehicle driven by one having obtained possession or control thereof without his express or implied consent;

(b) To either the owner or the driver involved in an accident when the director shall be satisfied that neither caused nor contributed to cause the accident . . .;

(c) To either the owner or driver of a vehicle involved in an accident that was caused by the criminal act of a third party, for which criminal act such other party has been convicted.

Thus, to be exempt from RSA 264:3, an owner must demonstrate that *neither* the owner nor the driver "caused or contributed to cause the accident," unless the owner can demonstrate non-permissive use or a criminal act by a third party. RSA 264:6, I. Proof that the owner did not cause the accident does not by itself exempt the owner from providing coverage.

Our analysis in *Universal Underwriters Insurance Co. v. Allstate Insurance Co.*, 134 N.H. 315, explains the relationship between the owner and the driver under the FRA. *Universal Underwriters* involved an accident with a borrowed car in which the driver was alleged to be at fault. *Id.* at 316. The owner had an insurance policy that covered the driver, but stated that the coverage was excess — *i.e.*, that it only applied to the extent that the driver did not have his own policy. *Id.* The driver, conversely, owned a policy that stated its coverage was excess to that held by the car's owner. *Id. Universal Underwriters* held that the excess clause in the owner's policy was invalid under the FRA, and that the owner's insurer was therefore primarily responsible under the FRA for providing coverage up to the statutory limits of the FRA. *Id.* at 317-18.

*Universal Underwriters*, thus, involves more than just an interpretation of insurance policies. The case establishes a rule of priority for FRA coverage, stating that an owner's obligation to pay FRA damages is primary with regard to that of the driver. The only relevant difference between Enterprise and the owner in *Universal Underwriters* is that Enterprise is self-insured. Nothing in either RSA 264:3 or RSA 264:20,

however, suggests that a self-insured entity has different FRA responsibilities than one that purchases an insurance policy from a third party. For this reason, I see no reason why *Universal Underwriters'* rule that an owner has the primary responsibility to provide FRA coverage should not apply in this case.

The purpose of the FRA is "to provide compensation to persons harmed by the negligent operation of motor vehicles." *Peerless Ins. Co.*, 115 N.H. at 494. Under the majority's analysis, if Enterprise rented a car to a driver who could not meet his FRA responsibilities, and that driver caused an accident, an injured third party would be unable to obtain FRA compensation from either the driver or the owner.

Today's decision also places a self-insured entity in a position superior to that of other entities. An entity covered by an insurance policy will ultimately bear some of the costs involved in accidents caused by its lessees in the form of higher insurance premiums. A self-insured entity, however, would not bear any costs except in those rare cases where the owner was alleged to be at fault. To avoid this inequitable result, most States that require owners to provide primary insurance coverage have held that a self-insured owner must also provide primary coverage. *See, e.g., Enterprise Leasing Co. v. Sako*, 590 N.W.2d 617, 618-19 (Mich. Ct. App. 1998); *Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 688-89 (Minn. 1998); *Chambers v. Agency Rent-A-Car, Inc.*, 878 P.2d 1164, 1165-67 (Utah Ct. App. 1994); *White v. Howard*, 573 A.2d 513, 515-16 (N.J. Super. Ct. App. Div. 1990).

The practical effect is to encourage entities to self-insure their vehicles, at the expense of their drivers and victims of motor vehicle accidents. While the legislature provides the option to become self-insured under the FRA, I find nothing in the statute intended to create an incentive or to provide owners with an advantage for doing so.

For these reasons, I respectfully dissent from the majority opinion.

NADEAU, J., joins in the dissent.