132 So.2d 177 (1961)
J. Edwin LARSON, as State Treasurer, ex-officio Insurance Commissioner of the State of Florida, Appellant,
v.
G.W. WARREN, Appellee.
J. Edwin LARSON, As State Treasurer, ex-officio Insurance Commissioner of the State of Florida, Appellant,
v.
Elizabeth G. WILLIAMS, Appellee.
Nos. 40073, 40073-A.
Supreme Court of Florida.
July 26, 1961.
*178 Richard W. Ervin, Atty. Gen., Robert J. Kelly and Gerald Mager, Asst. Attys. Gen., for appellant.
Walter Warren, Leesburg, for appellee.
PER CURIAM.
The above styled cases were by order of the trial court consolidated for appeal. A single brief in behalf of appellants and a single brief in behalf of appellees explore the questions raised in both cases. For convenience they will be referred to as (1) Larson vs. Warren and (2) Larson vs. Williams.

Larson vs. Warren
September 1, 1960, Warren filed his complaint in the Circuit Court of Lake County praying for a permanent injunction restraining Larson as administrator of the Financial Responsibility Act, Chapter 324, Florida Statutes 1959, F.S.A. from enforcing the provisions of said act against him [Warren]. The complaint also prayed for a final decree adjudicating § 324.021 et seq., Florida Statutes, F.S.A., as violative of the Fourteenth Amendment to the Constitution of the United States and Section 12, Declaration of Rights, Constitution of Florida, F.S.A.
September 26, 1960, defendant moved to dismiss the complaint. October 3, 1960, the court entered an order restraining Larson from taking the plaintiff's driver's license and registration. November 10, 1960, the plaintiff moved for summary decree and on November 17, 1960, defendant filed a cross motion for summary decree.
December 9, 1960, the chancellor entered a final decree adjudicating § 324.021 et seq., Florida Statutes, F.S.A., to be unconstitutional, in violation of the due process provisions of the Fourteenth Amendment to the Constitution of the United States, and Section 12, Declaration of Rights, Constitution of Florida. The final decree permanently restrained Larson from interfering with the driver's license and registration of the plaintiff.
December 22, 1960, by agreement of counsel for both parties the chancellor admitted in evidence a certain traffic accident report relating to Warren and one John H. Gandy. December 21, 1960, Larson entered his appeal from the final judgment to this court and seasonably filed his assignments of error and directions to the clerk.

*179 Larson vs. Williams
October 3, 1960, Williams filed her complaint in the Circuit Court of Lake County praying that Larson be directed to return to her the amount of $200, representing her security deposit made to him [Larson] pursuant to § 324.061, Florida Statutes, F.S.A. The complaint alleged that § 324.061 et seq., Florida Statutes, F.S.A. is unconstitutional and deprives the plaintiff of her property and rights without due process of law, contrary to the provisions of the Fourteenth Amendment, Constitution of the United States, and Section 12, Declaration of Rights, Constitution of Florida.
October 24, 1960, defendant moved to dismiss the complaint; November 10, 1960, plaintiff moved for summary decree and November 16, 1960, defendant filed a cross motion for summary decree.
December 6, 1960, the chancellor entered final decree adjudicating § 324.021 et seq., Florida Statutes, F.S.A., to be unconstitutional as violative of the Fourteenth Amendment to the Constitution of the United States, and Section 12, Declaration of Rights, Constitution of Florida. The final decree permanently restrained defendant from interfering with the driver's license and registration of the plaintiff; it determined the cause to be a class suit, directed defendant to forthwith refund the security deposit posted by plaintiff and all others similarly situated, less fifteen percent thereof to be set aside for plaintiff's attorney.
December 21, 1960, defendant entered his appeal to this court and seasonably filed his assignments of error and directions to the clerk.
The appellant has argued six questions but as we see it, the situation may be resolved in answer to the single question of whether or not the chancellor committed error in holding the applicable provisions of Chapter 324, Florida Statutes, F.S.A. to be violative of the due process provision of the Fourteenth Amendment to the Constitution of the United States, and Section 12, Declaration of Rights, Constitution of Florida.
This question is common to both the Warren case and the Williams case, but in the latter case, Mrs. Williams contends that the cash bond posted with appellant account of an alleged automobile accident should be returned to her and that a fee be paid her attorney on the ground that her suit is a class suit and that her attorney should be allowed a fee from the fund in the hands of appellant, the same having been accumulated by the unconstitutional requirement of posting bond by her and all others in similar situations.
We treat the constitutional question first. In order to place the issues in juxtaposition with the final decree, we recite the material part of the latter as entered on the motions for summary decree as follows:
"* * * such parts of Chapter 324.021, et seq., Florida Statutes, that authorize and direct the defendant to cause the suspension of the driver's license, the revocation of the automobile registration of certificate, and the taking up of the automobile license tag of the plaintiff, where he is said to have been involved in the injury to the person or property of another in connection with his automobile, and no court of competent jurisdiction having rendered a judgment establishing the liability of the plaintiff in connection with such event, are hereby declared to be unconstitutional for the reason that they violate the provisions of Section 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment to the Federal Constitution, and being unconstitutional, shall henceforth be null and void and of no force and effect and the defendant shall not attempt to enforce said unconstitutional provisions of said Chapter 324.021 et seq., from henceforth."
*180 Chapter 324, Florida Statutes, F.S.A. including the various provisions thereof involved in this case, is generally referred to as the Driver's Financial Responsibility Act. Its provisions pertinent to this case are lengthy and will not be quoted at length, but will be discussed sufficiently to clarify the question presented. The purpose of the act is well expressed in § 324.011, Florida Statutes, F.S.A.:
"It is the intent of this chapter to recognize the existing rights of all to own motor vehicles and to operate them on the public streets and highways of this state when such rights are used with due consideration for others; to promote safety, and provide financial security by such owners and operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle, so it is required herein that the owner and operator of a motor vehicle involved in an accident shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges."
There is certainly nothing unreasonable about the content and purpose of the act; it recognizes the right of every one to own and operate an automobile on the public highways so long as done with due consideration to the rights of others. To promote safety and secure others for injury done them the owner must show proof of financial responsibility to respond in damages. More than forty years ago this court held that an automobile was a dangerous instrumentality. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255. Certainly there is no better proof of this statement than the casualty reports published daily. These alone are sufficient to warrant strict rules and rigid enforcement of them to reduce deaths and property damages and make the highways a safer place for those who provide and use them. To the purpose of said act no objection is raised.
The state treasurer is designated as commissioner to enforce that phase of the Financial Responsibility Act having to do with financial responsibility of the automobile owner. He will hereinafter be referred to as "commissioner." The commissioner may take such steps as the law requires to keep the financial responsibility of the owner of an automobile current and may exact every showing within reason to do so. See §§ 324.021, 324.031, 324.042, 324.051 and 324.061, Florida Statutes, F.S.A. In the performance of this duty the commissioner has a very important and tremendous responsibility and that responsibility goes not only to the owner of the automobile involved in an accident, but to the entire public as well. Measured by this sense of responsibility, the acts of the commissioner in administering the act should be adjudicated.
It appears that appellees here were involved in automobile accidents; they could not secure release from liability of other parties involved in the accident and appellee Warren failed to post a cash bond as provided by § 324.061, Florida Statutes, F.S.A., and as required by the commissioner, account of which the commissioner threatened to revoke his driver's license and registration certificate. Appellee Williams deposited the required bond of two hundred dollars ($200.00) and sought in her suit to have it refunded. Appellees' grievance is that § 324.061, Florida Statutes, F.S.A., does not provide for a judicial hearing before revocation of their drivers' licenses and registration certificates, nor for a judicial appeal after such revocation.
In answer to this question it may be said at the outset that revocation of one's automobile license is not a peremptory act but is done after the commissioner has a full report of the accident from the department of public safety or secures such a report from reliable sources. See § 324.051, Florida Statutes, F.S.A., containing numerous *181 exemptions or exceptions. Then § 324.061, Florida Statutes, F.S.A., provides how amends may be made in the way of security deposit with the commissioner and § 324.071, Florida Statutes, F.S.A., provides the manner in which one's license and registration may be reinstated when suspended either under § 324.051 or § 324.072, Florida Statutes, F.S.A. When all these sections are explored, it appears that there are numerous means within the law by which one can relieve himself from the inconvenience of having his automobile license revoked.
In Wall v. King, 1 Cir., 206 F.2d 878, the court committed itself to the doctrine that in matters wherein exercise of the police power was involved, the due process clauses of the state and federal constitutions do not require notice and hearing prior to exercising powers conferred on the commissioner. It is also well settled that so long as a method of review is provided by rules of practice and procedure in the courts of Florida, the due process clause of the state and federal constitutions are not violated. In Florida Jurisprudence, Administrative Law, Section 182, pages 406 and 407, there is an enlightening discussion on the question.
Cases are legion which hold that when the public interest requires, the legislature may provide for summary action subject to later hearing or judicial review. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Thornhill v. Kirkman, Fla. 1953, 62 So.2d 740; State Plant Board v. Smith, Fla. 1959, 110 So.2d 401; Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52; Bourjois v. Chapman, 301 U.S. 183, 57 S.Ct. 691, 81 L.Ed. 1027; Ballow v. Reeves, Ky., 238 S.W.2d 141, 35 A.L.R.2d 1022, and Gillaspie v. Department of Public Safety, 152 Tex. 459, 259 S.W.2d 177.
While it is true that within the four corners of the Financial Responsibility Act no provision for review of orders of the commissioner is provided, it is also true that § 324.042, Florida Statutes, F.S.A., provides that the commissioner "shall provide for hearings before a deputy commissioner or referee upon request of persons aggrieved by orders or acts of the commissioner." Such request may be made immediately after the commissioner's order directing compliance with the Financial Responsibility Act or following the commissioner's order revoking one's license privilege. In the cases at bar plaintiffs omitted to request a hearing under the last cited statute but instead instituted actions for injunctive relief. Under such circumstances, are they entitled to raise the question of due process at this time? They have their cause here by injunction and the remedy used to get it here was not objected to below.
It is not required that Chapter 324 provide a method of review so long as such a method is otherwise provided in our judicial structure which we are advised was the case prior to 1955 (see Section 1, Chapter 29963, Laws of Florida). The Florida Appellate Rules [Rule 4.1] provide that they [appellate rules] shall "`supersede all conflicting rules and statutes' and such rules provide [Rule 4.1] that `All appellate review of the rulings of any commission or board shall be by certiorari.'" Codomo v. Shaw, Fla. 1958, 99 So.2d 849, 851. Review by certiorari, Rule 4.1, Florida Appellate Rules, 31 F.S.A., is ample to reach and accomplish any due process objection.
In addition to review by certiorari, the method provided under § 324.042, Florida Statutes, F.S.A., and that provided by Rule 4.1, Florida Appellate Rules, it is not out of place to direct attention to review by appeal as provided by § 624.0128, Florida Statutes, F.S.A., which, among other things, provides that "all findings of fact, final rulings, orders or decisions of the Commissioner, shall be subject to review by appeal to the District Court of Appeal, First District." The commissioner refers to the state treasurer as used in Chapter 324, Florida Statutes, F.S.A. In addition to the various methods provided for review of the question presented, good authority would *182 say that it could have been reached and reviewed by mandamus, State ex rel. Florida Ind. Commission v. Willis, Fla.App. 1960, 124 So.2d 48, but as shown, we do not have to resort to this.
It was, therefore, unnecessary for any provision of Chapter 324 to provide a method of review in the body of the act. Similar statutes in other states have not provided such a review. Division 7, Section 16000 et seq. California Statutes 1959, West's Ann.Vehicle Code; Chapter 13, Article 7, Colorado Revised Statutes 1953; Code of Delaware 1953, Title 21, Chapter 29, Del.C.Ann.; Annotated Code of Maryland, 1959, Article 66 1/2, Sec. 118 et seq.; Number 300, Public Acts of Michigan 1949, Sec. 501 et seq.; Vermont Statutes of 1957, Chapter 431, Sec. 10,163 et seq.; Code of West Virginia, 1955 and 1960, Supp., Chapter 17D.
The reports are replete with cases upholding the validity of acts very similar to the assaulted provisions of Chapter 324, particularly the license suspension provisions. Escobedo v. State Dept. of Motor Vehicles, 35 Cal.2d 870, 222 P.2d 1; Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21; Doyle v. Kahl, 242 Iowa 153, 46 N.W.2d 52; Ballow v. Reaves, Ky., 238 S.W.2d 141; Hadden v. Aitken, 156 Neb. 215, 55 N.W.2d 620, 35 A.L.R.2d 1003; Commonwealth v. Koczwara, 78 Pa. Dist. & Co. R. 6; Gillaspie v. Dept. of Public Safety, 152 Tex. 459, 259 S.W.2d 177; State v. Stehlek, 262 Wis. 642, 56 N.W.2d 514; Rosenblum v. Griffin, 89 N.H. 314, 197 A. 701, 115 A.L.R. 1367; Berberian v. Lussier, R.I., 139 A.2d 869; 5A Am.Jur., Automobiles, Section 151, pages 330-334.
The final decree was directed particularly to such parts of § 324.021 et seq., Florida Statutes, F.S.A., as authorize the suspension of driver's license, automobile registration certificate and automobile license tag. These were credentials required by law for owning and operating an automobile. Their suspension was in fact a punishment for not complying with §§ 324.021, 324.031, 324.051 and perhaps others. These provisions state requirements that every automobile owner and operator must meet in order to operate his automobile on the street.
Section 324.031, Florida Statutes, F.S.A., contains means for establishing financial responsibility; it affects every automobile owner alike and is not shown to be an unreasonable or arbitrary exercise of the police power. In every assault on an act like that before us it is the duty of the one who assaults it to show how it affects him in a different way from what it does other automobile owners; that it is arbitrary and unreasonable and is discriminatory as to classes and individuals. Appellees have failed completely to carry this burden. They could have saved themselves all the trouble and expense of this lawsuit by complying with the plain provisions of the act.
In reality the primary attack is directed to the substantive law rather than the lack of notice and due process. The case reminds one of Buck v. Bell, 274 U.S. 200, 47 S.Ct. 584, 585, 71 L.Ed. 1000. Carrie Buck was an inmate of the Virginia Colony for Epileptics and Feeble Minded. She was the daughter of a feeble minded mother and the mother of an illegitimate feeble minded child. An act of Virginia approved March 20, 1924, recites that the health of the patient and the welfare of society may be promoted in certain cases by the sterilization of mental defectives under careful safeguards; males by vasectomy and females by salpingectomy, without serious pain or substantial danger to life; that the state is supporting many defectives in institutions who, if discharged, would become a menace but if rendered incapable of procreating their kind could be discharged with safety and become self-supporting with benefit to themselves and society.
Carrie Buck was regularly found to be a proper subject for sterilization. She *183 assaulted the Virginia act providing therefor on the identical grounds raised in the cases at bar. The circuit court upheld the act against such attack and the Supreme Court of Appeals of Virgina affirmed, which judgment was affirmed by the Supreme Court of the United States, opinion by Mr. Justice Holmes in which it was said:
"* * * In view of the general declarations of the Legislature and the specific findings of the Court obviously we cannot say as a matter of law that the grounds do not exist, and if they exist they justify the result. We have seen more than once that the public welfare may call upon the best citizens for their lives. It would be strange if it could not call upon those who already sap the strength of the state for these lesser sacrifices, often not felt to be such by those concerned, in order to prevent our being swamped with incompetence. It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind. The principle that sustains compulsory vaccination is broad enough to cover cutting the Fallopian tubes. Jacobson v. Massachusetts, 197 U.S. 11, 25 Sup.Ct. [Rep.] 358, 49 L.Ed. 643, 3 Ann.Cas. 765. Three generations of imbeciles are enough."
The reasoning in the Buck case is peculiarly applicable to the case at bar wherein we are confronted with the challenge to the validity of an act which recognizes the right of all people to own and operate a dangerous instrumentality on the public highways where tens of thousands are slaughtered or maimed annually on account of the careless or thoughtless management of said instrumentality. Can there be any good reason why owners and operators of automobiles should not do so with due consideration for the rights of others, to promote public safety and provide security to those whom they injure or whose property they destroy? The dominant purpose of the act is to protect the public safety by enlarging our sensitivity to road etiquette and our responsibility to the rights of others who are using the highways. We have found nothing unreasonable or arbitrary about it.
The second and only other question presented is whether or not the chancellor committed error in allowing attorney's fees to plaintiff's attorney on the theory that this was a class suit and the funds in the hands of appellant were accumulated by the unconstitutional requirement of posting a bond by her and others in like situation.
The chancellor allowed attorneys' fees from the security deposits accumulated by defendant pursuant to § 324.061, Florida Statutes, F.S.A. The general rule is well settled in this state that attorneys' fees are usually allowed only when provided for by statute or agreement. In re Field's Estate, Fla.App. 1960, 121 So.2d 46, 47, citing numerous cases. To support their contention, appellees rely primarily on Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188; Tenney v. City of Miami Beach, 150 Fla. 241, 7 So.2d 136, wherein a number of taxpayers brought proceedings on behalf of themselves and those in like situation to have certain assessments declared invalid. The court felt that those property owners who were fairly represented in that suit should not receive the benefits of the litigation without paying their share of the attorneys' fees payable from the assessments the city had collected. They constituted a distinct and restricted class who were on notice of the litigation, its purpose and that it grew out of a single act of the city in imposing an assessment on all members of the class; that the litigation showed that Tenney was suing for a class of more than 170 or 232 lot owners and that there was no apparent effort from the record *184 to bind anyone who was not given an opportunity to appear.
The circumstances in the Tenney case are entirely different from those in the cases at bar. There are no allegations by the plaintiff to show the existence of a distinct or restricted class, to show a community of interest between herself and the members of her class; there is no showing of a class so numerous as to make it impracticable to bring them before the court nor is there anything to show plaintiff's appearance is a true and fair representation of the alleged class.
It follows that the chancellor was in error in adjudicating § 324.021 et seq., Florida Statutes, F.S.A., to be unconstitutional as violative of Section 12, Declaration of Rights, Constitution of Florida, and the Fourteenth Amendment to the Constitution of the United States. While provision for notice was not carried in the body of the act challenged, if notice was required in this case, it was amply provided for in our judicial structure as pointed out herein. That part of the chancellor's decree allowing attorneys' fees to Mrs. Williams' attorneys was also in error, so the decree appealed from must be, and is hereby, reversed on both questions.
Reversed.
ROBERTS, C.J., TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.
DREW, J., dissents in part and concurs in part.
DREW, Justice (dissenting in part and concurring in part)
I concur in the conclusion reached by the majority that the lower court erred in awarding attorneys' fees from the security deposits to the plaintiff's attorney in the Williams case.
I dissent, however, from the remainder of the opinion because of my firm view that the questioned statute in its present form is unconstitutional and invalid because it violates the due process clause of the Fourteenth Amendment to the Constitution of the United States and Section 12 of the Declaration of Rights of the Constitution of the State of Florida. Because the trial court in exhaustive opinions and judgments in both the Warren and Williams cases so clearly and concisely expressed the views which I hold of this matter, I adopt the following portions of the opinions in the two cases dealing with the subject as my dissent to the opinion of the majority in these two consolidated cases.
In the Warren case the trial court said inter alia:
"1. That the only matters presented and argued to the Court are questions of law, and the first of them is whether or not Chapter 324.021, et seq., Florida Statutes violates the due process clauses of the State and Federal Constitutions, being respectively Section 12 of the Declaration of Rights of the Florida Constitution, and Section 1 of the Fourteenth Amendment to the Federal Constitution. The defendant has filed no other defense and offers no other argument or position.
"2. That the application of said Chapter 324.021, in this case has deprived the plaintiff of due process of law in violation of Section 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment to the Constitution of the United States. This holding is limited to the action of the defendant, his agents and employees in causing or attempting to cause the suspension of the automobile driver's license and the automobile license plates of the plaintiff unless he obtains a release from the person alleged to have been injured in *185 an accident involving the automobile of the plaintiff, or unless he posts a cash bond with the defendant in the sum and amount of Five Hundred Dollars; there having been no adjudication by any Court of any kind that the plaintiff was liable in damages to the alleged injured persons in any sum whatsoever.
"3. The Court finds that under the circumstances presented in this case, that although there is no proof or charge that the plaintiff is liable to anyone for damages in any amount on account of the operation of his automobile or by virtue of being the owner thereof, the defendant must require the plaintiff to obtain a release from the person alleged to be injured or must require the plaintiff to post a cash bond with him. Under the terms of the Act, the defendant has no discretion whatsoever, and could not, even if he wanted to, find such action is not necessary under these circumstances. The Act does not provide for any appeal to the Court before the suspension of the driver's license and the taking up of the automobile license tag, neither does it afford a review by the Court of such action upon the part of the defendant. So it is, that under the terms of the Act, neither the Courts can give the plaintiff a day in Court nor can the defendant do other than revoke the driver's license and cause the automobile license tag to be taken up. Therefore, it clearly appears to this Court that under the terms of the Act the plaintiff is denied due process of law.
"4. The defendant also asserted that the plaintiff had an adequate remedy by virtue of Rule 4.1 Florida Appellate Rules. This position is untenable for two reasons, First: Under Chapter 324.021, et seq., the defendant cannot make a ruling  he must arbitrarily cause the driver's license to be suspended. He has no discretion. So therefore, there can be no certiorari proceedings for the Appellate Court to determine if the defendant abused his discretion. Second: Even if certiorari did apply, the practical effect would be to deprive the driver of due process, because the certiorari would not act as a supersedeas and the driver would be deprived of his rights during the consideration of the certiorari proceedings." In the Williams case the trial court observed: "1. That the only issues of law set up by the pleadings are:
"(1) Whether or not Chapter 324.021, et seq., Florida Statutes, violates the due process clause in the State and Federal Constitutions, being respectively Section 12 of the Declaration of Rights of the Florida Constitution, and Section I of the Fourteenth Amendment to the Federal Constitution.
"(2) * * *
"(3) The defendant also asserted that the plaintiff had an adequate remedy by virtue of Rule 4.1 Florida Appellate Rules. This position is untenable for two reasons, First: Under Chapter 324.021, et seq., the defendant cannot make a ruling  he must arbitrarily cause the driver's license to be suspended. He has no discretion. So, therefore there can be no certiorari proceedings for the appellate court to determine if the defendant abused his discretion. Second: Even if certiorari did apply, the practical effect would be to deprive the driver of due process, because the certiorari would not act as a supersedeas and the driver would be deprived of his rights during the consideration of the certiorari proceedings.
"2. That the application of said Chapter 324.021 in this case deprived the plaintiff, and all other persons similarly situated, of due process of law in violation of Section 12 of the Declaration of Rights of the Florida Constitution, and the Fourteenth Amendment to the Constitution of the United *186 States. This holding is limited to the action of the defendant, his agents and employees, in causing or attempting to cause the suspension of the automobile driver's license of persons similarly situated to the plaintiff at the time of the institution of this cause of action, and the taking up of the automobile license plates of persons similarly situated to the plaintiff at the time of the institution of this suit, unless they post a cash bond with the defendant in such sum as he requires; there having been no adjudication by any court of any kind of persons similarly situated to the plaintiff at the time of the institution of this suit liable in damages to the financially damaged persons in any sum whatsoever.
"3. This Court finds that under the circumstances presented by the plaintiff in this cause at the time of the institution of said suit, that although there was no proof or charge that the plaintiff was liable to anyone for damages in any amount on account of the operation of her automobile by virtue of being the owner thereof, the defendant had to require the plaintiff to obtain a release from the person said to be financially damaged or had to require the plaintiff to post a cash bond with him. The Act does not provide for any appeal to the Courts before the suspension of the driver's license, neither does it afford a review by the court of such action upon the part of the defendant. So it is, under the terms of the Act, neither the courts could give the plaintiff a day in court, and neither could the defendant do other than to revoke the driver's license and cause the automobile license tag to be taken up. Therefore, it clearly appears to this Court that according to the terms of the Act, the plaintiff was deprived of due process of law. These statements also apply to all other persons similarly situated to the plaintiff at the time of the institution of this suit."
I would affirm the decision of the trial court in all respects except with regard to the award of attorneys' fees which I would reverse.
THOMAS, J., concurs.