236 So.2d 98 (1970)
Broward WILLIAMS, As Treasurer and ex Officio Insurance Commissioner of the State of Florida, Appellant,
v.
Lou Verda Bryant NEWTON, Appellee.
No. 38406.
Supreme Court of Florida.
May 20, 1970.
Rehearing Denied June 26, 1970.
*99 Earl Faircloth, Atty. Gen., Stephen Marc Slepin, Asst. Atty. Gen., and Robert J. Kelly, Gen. Counsel, for appellant.
Charles N. Prather, Exec. Atty., Orlando, and James M. Barclay, Maitland, Staff Atty., Legal Aid Attys., for appellee.
BOYD, Justice.
This cause is before us on appeal from the judgment of the Circuit Court, Orange County, holding certain provisions of Florida Statutes Chapter 324, F.S.A., the Financial Responsibility Law, unconstitutional. The judgment of the trial court passed directly on the validity of a state statute, giving this Court jurisdiction under § 4, Article V of the Florida Constitution, F.S.A.
Appellee Newton was involved in an automobile accident on May 22, 1968. On August 12, 1968, appellant notified her of the requirement under Florida Statutes Chapter 324, F.S.A. that she show proof of financial responsibility and unless she complied her driver's license and/or motor vehicle tags and registration privileges would be suspended on September 16, 1968. Upon appellee's failure to comply, appellant, on September 26, 1968, ordered suspension of appellee's driving privileges. Appellee did not yield up her motor vehicle registration or request a hearing pursuant to Florida Statutes § 324.042, F.S.A. Instead she filed an action for injunctive and declaratory relief stating that because of her limited financial ability she was and is unable to comply with Chapter 324 in the procurement of insurance, posting bond or becoming self-insured. Appellee contended that Act violated the due process and equal protection clauses of the United States and Florida Constitutions, in that it allows suspension of drivers' licenses without a hearing on the question of culpability and treats all owners and operators of vehicles involved in an accident alike, regardless of fault.
The trial court in declaring Florida Statutes § 324.051, F.S.A. unconstitutional, held:
"* * * [W]ithout precise regard to the language in Section 324.011, the provisions of Section 324.051 are unconstitutional in that the classification of persons subject to the Act bears no reasonable relation to the broad subject matter of the legislation. Section 324.051 puts the non-negligent, non-liable, `uninsured' motorist or owner into the same category with the negligent, liable, `uninsured' operator or owner. Such a classification cannot reasonably be said to promote safety or to provide financial security for those entitled to be recompensed by negligent owners or operators."
The lower court also held:
"The administrative remedies allowed and provided by the Act are contrary to the intent of the Statute and unconstitutionally deny the Defendant the equal protection of the law."
Petitioner was ordered to restore respondent's driver's license, registration plates, etc., and to hold a hearing in accord with Florida Statutes § 120.22 and § 120.23, F.S.A. of the Administrative Procedure Act.
Florida Financial Responsibility Law, like that of many other states,[1] requires *100 compliance only after an owner or operator of a motor vehicle is involved in an accident. The Legislature could have required financial responsibility as a condition precedent to the operation of a motor vehicle on the highways of this State, as do the laws of some states.[2] The financial responsibility laws of a number of states require compliance only after failure to satisfy a judgment resulting from the accident.[3] Florida's law is not of this type.
There is no question that the Legislature has the power to enact Chapter 324 requiring proof of financial responsibility after involvement in an accident. The lower court's basic objection to the Act is the unfairness of treating all owners and operators involved in an accident alike, regardless of fault and requiring all to show proof of financial responsibility. The holding is that the lack of classification separating those at fault from those not at fault offends equal protection of the law and the failure to provide a pre-suspension hearing to determine fault denies due process of law.
The lower court found that the provisions of Florida Statute § 324.051(2) (a), F.S.A. are inconsistent with the intent of the Act set out in Florida Statute § 324.011, F.S.A.[4] Section 324.051(2) (a) provides in pertinent part as follows:
"Thirty days after receipt of notice of any accident involving a motor vehicle within this state which has resulted in bodily injury or death to any person, or total damage of fifty dollars or more to property, the commissioner shall suspend the licenses of the operators and all registrations of the owners of the vehicles involved in such accident and in case of a nonresident owner or operator, shall suspend such nonresident's operating privilege in this state, unless such operator or owner shall prior to the expiration of such thirty days be found by the commissioner to be exempt from the operation of this chapter, based upon evidence in his files satisfactory to him that:
"1. No injury was caused to the person or property of anyone other than such operator or owner, or
"2. The motor vehicle was legally parked at the time of such accident, or
"3. The motor vehicle was owned by the United States government, this state, any political subdivision of this state or any municipality therein, or
"4. Such operator or owner had been finally adjudicated not to be liable by a court of competent jurisdiction, or
"5. Such operator or owner had secured a duly acknowledged written agreement providing for release from liability by all parties injured as the result of said accident and had complied with one of the provisions of § 324.031, or
"6. Such operator or owner has deposited with the state treasurer security to conform with § 324.061 and has complied with one of the provisions of § 324.031."
Under Florida Statute § 324.051(2) (b), F.S.A., the above-quoted section only applies to uninsured operators or owners. The commission by regulation adopted pursuant *101 to Florida Statute § 324.042, F.S.A., has provided for a hearing limited to the exemptions set forth in Florida Statute § 324.051(2), F.S.A.
We do not agree that the Act violates the constitutional guarantees of equal protection or due process. All owners and operators of motor vehicles are treated alike. The failure to classify those at fault in causing an accident into a group apart from those not at fault may seem "unfair," particularly to the innocent motorist, but it is not unconstitutional. Determination of the question of fault in an accident may be a long involved process through the courts. In the interim the Legislature has seen fit to require that all uninsured motorists involved in the accident obtain insurance or otherwise prove financial responsibility. The result is to protect accident victims regardless of the eventual outcome of proceedings determining fault, and to protect the driving public against other uninsured accidents involving those operators or owners occurring in the interim. The fact that the owner or operator not at fault in an accident is required to obtain insurance does not constitute the imposition of a "penalty" on the innocent motorist. Insurance is for the benefit of the owner and operator as well as the public.
Appellee's contention that Florida's Financial Responsibility Law denied equal protection to the poor or indigent, is without merit. This contention has been universally rejected in other jurisdictions having acts similar to Florida. In Hadden v. Aitken[5] the Nebraska Supreme Court stated:
"Financial responsibility laws such as this do not unconstitutionally discriminate against the poor. * * * Those damaged by the negligence of indigent drivers may be indigent also, and as little able as the drivers to bear the cost of such negligence. The fallacy of the argument that the law favored the rich over the poor `lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment.' * * * Those who cannot afford to possess automobiles are as little able to enjoy the opportunity of driving on the public highways as those who cannot afford insurance or security."
The operation of financial responsibility laws requiring compliance after an accident by all owners and operators, regardless of fault has also been upheld. In Ballow v. Reeves[6] the Kentucky Court stated:
"The question of negligence has nothing to do with the matter. The requirement of financial responsibility does not in any sense pre-determine the question of liability, which could only be decided in a judicial proceeding. It simply furnishes an added protection to the public and better assures the safety of our highways, and is not dependent upon the operator's skill or lack of it. The statute is not unreasonable in failing to require a showing of negligence prior to suspension of the license."
In a leading case on the subject, Rosenblum v. Griffin,[7] the Supreme Court of New Hampshire held:
"From a practical standpoint, if there is fault for an accident, it is reasonable that suspension should follow, and immediately. But provisional finding of fault is indecisive and much less is a charge or claim of fault. * * * The determination of a contested claim of fault is usually after a substantial length of time subsequent to the accident. The development *102 of the legislation in meeting the problem of prospective liability, either probable or possible, for an accident, has led to the final policy of ignoring it as a test of suspension.
"It may with reason be thought unjust that unless an operator is actually at fault for an accident, either he or the owner, if not the operator, should lose his license. * * * But though the act thus produces hardship, it establishes conditions which are definite and conclusive in meeting the need of prompt action."
The contention that Chapter 324, in failing to provide for a pre-suspension hearing on the question of fault violates due process, was considered and rejected by this Court in Larson v. Warren,[8] wherein we stated:
"Cases are legion which hold that when the public interest requires, the legislature may provide for summary action subject to later hearing or judicial review."
In Thornhill v. Kirkman,[9] this Court followed the weight of authority holding that a driver's license is a "privilege" subject to summary regulation.
The function of the judiciary in passing on the validity of a legislative enactment has been defined in a number of cases.[10] The wisdom, propriety, utility and expediency of legislation are for the Legislature to determine and not the courts. The lower court in its opinion has come perilously close to passing on the wisdom and expediency of the legislation under consideration.
The automobile is a dangerous instrumentality as the ever mounting death and destruction on the highways attest. Its operation is a privilege subject to regulation for protection of the public against irresponsible owners and operators. The event which triggers the Florida Financial Responsibility Act is the occurrence of an accident resulting in bodily injury or property damage of $50 or more. Fault is not a consideration. The Legislature in its wisdom has determined that this event, an accident, rather than some other, will bring the Act into operation. The exemptions allowed in § 324.051(2) (a) do not change the character of the Act as operating initially without regard to fault.
Respondent has failed to show that Chapter 324 violates any constitutional provision. Her contentions hinge on a basic misunderstanding of the Act's operation and boil down to a charge of "unfairness."[11] This has never been sufficient to defeat an enactment of Legislature for a proper purpose under the police power. In Larson, supra, we stated:[12]
"Section 324.031, Florida Statutes, F.S.A., contains means for establishing financial responsibility; it affects every automobile owner alike and is not shown to be unreasonable or arbitrary exercise of the police power. In every assault on an act like that before us it is the duty of the one who assaults it to show how it affects him in a different way from what it does other automobile *103 owners; that it is arbitrary and unreasonable and is discriminatory as to classes and individuals. Appellees have failed completely to carry this burden. They could have saved themselves all the trouble and expense of this lawsuit by complying with the plain provisions of the act."
Accordingly, the judgment of the trial court is quashed and the cause remanded for further proceedings consistent herewith.
It is so ordered.
ERVIN, C.J., and ROBERTS, THORNAL and CARLTON, JJ., concur.
DREW, J., dissents with opinion.
ADKINS, J., dissents and concurs with DREW, J.
DREW, Justice (dissenting).
I am unable to agree with the majority. I find that on its face and in its operation the license suspension procedure of Florida's Financial Responsibility Act is patently invalid and unconstitutional.
The act, in its operation, violates the equal protection provision of the Florida and United States Constitutions. The effect of Section 324.051 is to classify persons subject to the act in a manner which bears no reasonable resemblance to the purpose of the act, which is "to promote safety, and provide financial security by such owners and operators whose responsibility it is to recompense others for injury to person or property."[1] The non-negligent, non-liable uninsured motorist is placed into the same category as the uninsured motorist who is both negligent and liable. Such a classification neither promotes safety nor provides financial security for those entitled to be recompensed by negligent, liable owners or operators. When a non-negligent motorist who is also financially impoverished or indigent is required to comply with the act, this motorist loses his driving privileges solely for lack of funds or other resources with which to comply with the act.
The guarantee of equal protection of the law does not prevent reasonable classification. But the effect of the act is a classification based upon monetary resources which, absent culpability, has no reasonable relation to any legitimate public interest promoted by the act. The resultant punishment lacks a rational basis. Those drivers who can afford to pay continue to drive, regardless of their culpability and negligent habits. Indigents who cannot pay lose their licenses, registrations and tags, even if without fault, and the purpose of the act has not been served. No legislative act so clearly obnoxious to the equal protection principle found in the Fourteenth Amendment to the United States Constitution and in the Declaration of Rights of the Florida Constitutions of 1885 and 1968 should be upheld.
In the case of Larson v. Warren[2], the majority of this Court upheld the constitutionality of the Insurance Commissioner's right to summarily suspend driving privileges prior to a hearing, on the basis that hearing and review procedures afforded subsequent to the suspension satisfy due process requirements. I was unable to agree with the majority in Larson, and I am now more convinced than ever that the summary suspension procedure before any hearing is made available to the motorist violates the due process clauses of the Fourteenth Amendment to the United States Constitution and Section 12 of the Declaration of Rights of the 1885 Florida Constitution.[3]
*104 In Larson, I agreed with the trial court's view that no adequate review procedure was available to the motorist once his privileges were suspended. The majority herein suggests that review of the Commissioner's summary suspension may be obtained by any one of four different modes. Each of these suggested routes for review, including a post-suspension hearing pursuant to Section 324.042, avail only after the motorist has lost his driving rights. Without going into whether such review would in fact be available, inasmuch as there is no stay order provision within the act or rules of the Insurance Commissioner, and no provision for determining culpability, such post-suspension review procedures are inadequate.
The Larson opinion was rendered before passage of the Administrative Procedure Act, Florida Statutes Chapter 120, F.S.A. Section 120.20 clearly enunciates the legislative intent relative to Part II, Administrative Adjudication Procedure:
"It is the intent of the legislature to establish minimum requirements for the adjudication of any party's legal rights, duties, privileges or immunities by state agencies. Subsequent inconsistent laws shall supersede part II only to the extent that they do so by express reference."
Although this Court in Larson was of the opinion that satisfaction of due process did not require a pre-suspension hearing, Section 120.22 of the Administrative Procedure Act now guarantees that such a hearing shall be held before entry of an order depriving a motorist of such an important right:
"Any party's legal rights, duties, privileges or immunities shall be determined only upon public hearing by an agency unless the right to public hearing is waived by the affected party, or unless otherwise provided by law."
Chapter 324 does not expressly prohibit or provide a substitute for a hearing prior to entry of an order suspending a motorist's driving privileges. Therefore the "unless otherwise provided by law" provision in Section 120.22 above does not obviate the legal right to a pre-suspension hearing if requested by an aggrieved motorist.[4]
The Commissioner has argued that legal liability or responsibility for damages resulting from an accident is an issue solely for the courts, and that the Commissioner could not possibly be required to determine such liability or fault under Chapter 324 without violating Articles II and V of the Florida Constitution. The Commissioner of course is correct that ultimate legal liability is an issue for the courts. However, I know of no principle of law that would prohibit the Commissioner from making a preliminary determination of possible fault or liability on the facts then before him, solely for the purpose of applying the Financial Responsibility Act. Even now, under Section 324.051(2) (a), the Commissioner must make a "quasi-judicial" determination that "no injury was caused to the person or property of anyone other than" the operator or owner; and, under Section 324.051(2) (b) par. 1, the Commissioner is required to determine the existence of liability insurance covering the vehicle involved. Certainly at times the above issues may prove as difficult to determine as liability; and if such issues can be decided for purposes of invoking the act, then for the same purpose the Commissioner can determine whether the person sought to be brought under the act is one "responsible to recompense others for injury to person or property."
*105 To summarize, mere "involvement" in an accident, without any provision for determining possible liability for damages incurred therein, precipitates mandatory compliance with the act. This scheme in its operation works a needless and unsupportable discrimination against our economically less fortunate fellow citizens, thus depriving them of their right to equal protection under the law. It is offensive to every principle of fair play. Failure of Chapter 324 to afford the motorist a pre-suspension hearing, or in the alternative to afford such a hearing pursuant to Chapter 120, the Administrative Procedure Act, deprives the motorist of property without due process of law as envisioned in our state and federal constitutions.
My views are buttressed by recent decisions of the highest courts in several of our sister states. The Colorado safety responsibility law suspension procedure and exemptions therefrom generally parallel the Florida act. The Colorado Supreme Court has held the mandatory suspension procedure unconstitutional in People v. Nothaus.[5] I am completely in accord with the views expressed in that opinion, and particularly with the following statement:[6]
"The requirement * * * that the director of revenue, `* * * shall suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident * * *' unless such persons deposit a sum `sufficient in the judgment of the director * * *' to pay any damage which may be awarded, or otherwise show ability to indemnify the other party to the accident against financial loss, has nothing whatever to do with the protection of the public safety, health, morals or welfare. It is a device designated and intended to bring about the posting of security for the payment of a private obligation without the slightest indication that any legal obligation exists on the part of any person. The public gets no protection whatever from the deposit of such security. This is not the situation which we find in some states where the statutes require public liability insurance as a condition to be met before a driver's license will issue. Such statute protects the public. The statute before us is entirely different. In the matters to which we have particularly directed attention, [the statute] is unconstitutional. On a matter so obviously basic and fundamental no additional citation of authority is required. We reach this conclusion notwithstanding the fact that other jurisdictions have seemingly overlooked basic constitutional guarantees which must be ignored in reaching an opposite conclusion (emphasis added)."
Soon after Idaho's passage of an act similar to the Florida Financial Responsibility Law,[7] an automobile salesman challenged the suspension of his license and refusal of the Commissioner of Law Enforcement to reinstate it. The court's description of the suspension provision is equally applicable to Florida's Act:[8]
"Under the [Idaho Act] the commissioner may arbitrarily or capriciously summarily suspend or revoke a driver's license upon the sole and only ground that the licensee has been involved as a driver in any accident resulting in the *106 death or personal injury of another or serious property damage, although the licensee may have been absolutely free from negligence, and in no way responsible for the death or personal injury of another or serious property damage."
The Court goes on to note that the Idaho provision is an abridgement of a section of the Uniform Motor Vehicle Operators' and Chauffeurs' License Act. The Uniform Act provides for summary suspension when there is evidence of fault. Idaho, like Florida, has substituted for "fault" the mere "involvement" in any accident.[9] The Idaho Supreme Court declared the suspension procedure unconstitutional because it denied the owner or operator of a motor vehicle the right to the use, in a lawful manner, of his property, contrary to the due process clauses of the United States and Idaho constitutions.
The Arizona Financial Responsibility Act is patterned after the Financial Responsibility Act of the Uniform Vehicle Code. The Arizona act includes a provision similar to Section 324.042, Florida Statutes 1967, F.S.A., requiring the Motor Vehicle Commissioner to "provide for hearings before a deputy commissioner or referee upon request of persons aggrieved by orders or acts of the commissioner." A person aggrieved by an order under the Arizona act may within ten days file a petition to obtain a trial de novo to determine whether the order is lawful and reasonable.[10]
In Schecter v. Killingsworth,[11] the Arizona Supreme Court found that only by construing the act as affording a pre-suspension hearing could the court satisfy due process objections to the act. The Arizona act contains a provision similar to a California requirement that a security deposit is required only of those against whom, in the opinion of the department, a judgment might be recovered. Since recovery of a judgment depends on culpability, the Arizona Court agreed that an administrative determination of culpability, i.e., "whether there is any reasonable possibility that a judgment will be recovered against the motorist", is indicated by the statute and must be included within the scope of the hearing.
The majority of the Supreme Court of California, in Escobedo v. State Department of Motor Vehicles,[12] expressed its view that use of our roads and streets for purposes of travel and transportation is not a mere privilege, but a common and fundamental right. After expressing this general principle, the court held that suspension of the driving right without prior hearing did not violate due process because it was reasonably justified by a compelling public interest, that compelling public interest being the "obvious carelessness and financial irresponsibility of a substantial number of drivers. * * *" The court relied heavily upon the express availability of judicial review of the suspension order after its entry.
The California act then in effect differed from the present Florida act in one important respect: security was not required of every operator who was involved in an accident, but only of those against whom, *107 in the opinion of the department of motor vehicles, a judgment might be recovered. That is, the act required that there be a determination of possible liability or culpability  although it be without hearing  before requiring a security deposit or evidence of insurance or other financial responsibility.
The dissenting justices on the California court, in separate opinions, aptly pointed out that there is a complete lack of "compelling public interest" to justify license suspension without a prior hearing. The sole pressing need is that a private person have security for compensation of any injuries caused by another individual and that need is directly coupled to liability.
In the subsequent case of Orr v. Superior Court of the City and County of San Francisco,[13] the license suspension procedure in California again came under attack for its failure to provide a hearing prior to suspension. Despite the fact that the California statute requires the department to find that there is a reasonable possibility that a judgment may be recovered against an uninsured operator before it can demand security and suspend the license if security is not posted, the department contended in Orr that mere involvement in an accident resulting in damage or injury was the only criterion for applying the statute; that it need make no determination of culpability.
The court reaffirmed its statements in Escobedo, stating that before ordering suspension of the license of a driver involved in an accident, "the department must determine whether there is a reasonable possibility that a judgment may be recovered against the driver, and so must consider culpability * * *." In Orr the court did not expressly consider a statute which dispenses with all consideration of fault, such as the Florida act, but it implied that such an act would suffer a fatal constitutional infirmity.
Today the social and economic circumstances of many persons have placed motor vehicles in the category of necessities. Each citizen has a basic right to make use of his automobile on the public highways of the state  full freedom to travel from place to place in the enjoyment of life and liberty.[14] Any limitations which might be placed upon this inherent right must be based upon proper exercise of the police power of the state in the protection of the public health, safety and welfare. Any unreasonable restraint upon the freedom of the individual to make use of the public highways, and thereby use of his automobile, cannot be sustained. Regulations imposed upon the right to make use of public highways must have a fair relationship to the protection of the public safety.
I do not question the Legislature's authority to establish reasonable standards of fitness and competence to drive a motor vehicle applicable to citizens before they are allowed to drive upon the public highways. A motorist meeting the standards thus defined in a proper exercise of the police power has a right to continue in the full enjoyment of that right until by due process of law it has been established that he has abused the right or that other just cause makes it reasonably necessary in the interest of public safety to deprive him of the right to drive on the public highways. Such action cannot be taken without notice *108 to the motorist and without some opportunity for him to be heard on the question of whether sufficient grounds exist to warrant revocation of his right to drive.
The recent decisions from the highest courts in Colorado, Arizona and California, evidence an increasing concern for and awareness of infirmities in the widely-used statutory scheme employed in Florida which until the more recent decisions discussed herein has remained inviolate to all attacks.
I have no quarrel with those acts that require all motor vehicle operators or owners to produce evidence of liability insurance or other financial resource as a condition to issuance of a driver's license or title certificate.[15] All are treated alike and required to comply with the act, as opposed to the Florida scheme whereby those merely involved in an accident are singled out for compliance, whether at fault or not. Florida's act singles out the innocent driver involved in an accident from all other innocent drivers on the highway, and discriminates against him alone by requiring him to meet the demands of the act or lose his license. No such demand is made on other innocent drivers, who may or may not be able to satisfy the demands of the act.
Under our present law, an impecunious motorist innocently waiting at a stoplight who is rammed by another motorist automatically loses all driving rights, although the impecunious driver is wholly free from fault and perhaps has never violated a traffic law in his life. The least the Legislature could do in a situation such as this, where innocent people are bound to be needlessly penalized and the faultless are bound to be punished, is devise some method for freeing the absolutely innocent from the penalties imposed upon them by the act.
For the reasons herein expressed, I respectfully dissent.
ADKINS, J., concurs.
NOTES
[1] 35 A.L.R.2d 1011, 1021 (1954).
[2] Id. at 1016; 39 A.L.R. 1028, supplemented by 69 A.L.R. 397 (1930).
[3] 35 A.L.R.2d 1011, 1017 (1954).
[4] "[T]o promote safety, and provide financial security by such owners and operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle, so it is required herein that the owner and operator of a motor vehicle involved in an accident shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges."
[5] 156 Neb. 215, 224, 55 N.W.2d 620, 624 (1952).
[6] 238 S.W.2d 141, 142 (Ky. 1951).
[7] 89 N.H. 314, 317, 197 A. 701, 704 (1938).
[8] 132 So.2d 177, 181 (Fla. 1961).
[9] 62 So.2d 740 (Fla. 1953).
[10] See e.g., Adams v. Sutton, 212 So.2d 1, 3 (Fla. 1968).
[11] Watson v. Buck, 313 U.S. 387, 403, 61 S.Ct. 962, 968, 85 L.Ed. 1416 (1940):

"Nor is it within our province * * * to scrutinize the act in order to determine whether we believe it to be fair or unfair, conducive to good or evil for the people of Florida, or capable of protecting or defeating the public interest of the state. These questions were for the legislature of Florida and it has decided them."
[12] 132 So.2d 177, 182 (Fla. 1961).
[1] Fla. Stat. § 324.011 (1967), F.S.A.
[2] 132 So.2d 177 (Fla. 1961).
[3] The "due process" guarantee now appears in Section 9, Declaration of Rights, 1968 Florida Constitution.
[4] One of our district courts of appeal has interpreted the above provision as follows: "It is obvious the intention of the legislature in promulgating F.S.A. §§ 120.22 and 120.23 was to guarantee to any party affected by agency action a hearing before any of the party's rights, privileges, or immunities were affected, not afterwards." [Emphasis added.] Wilson v. Pest Control Commission of Florida, 199 So.2d 777, 780 (1st Dist.Ct. App. Fla. 1967). See also Williams v. Ferrentino, 199 So.2d 504 (2nd Dist.Ct. App. Fla. 1967).
[5] 147 Colo. 210, 363 P.2d 180 (1961).
[6] People v. Nothaus, 147 Colo. 210, 363 P.2d 180, 183 (1961).
[7] The pertinent portions of the Idaho law are as follows:

"The department is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee: * * *
2. Has been involved as a driver in any accident resulting in the death or personal injury of another or serious property damage."
Section 30, subd. (a), Chapter 88, 1935 Session Laws of Idaho.
[8] State v. Kouni, 58 Idaho 493, 76 P.2d 917, 918 (1938).
[9] Uniform Motor Vehicle Operators' and Chauffeurs' License Act, Vol. 9, Uniform Laws, § 19, p. 330: "The Department may immediately suspend the license of any person without hearing and without receiving a record of conviction of such person of crime whenever the Department has reason to believe: * * * 2. That such person has, by reckless or unlawful operation of a motor vehicle, caused or contributed to an accident resulting in death or injury to any other person or serious property damage (emphasis added)." Subd. 2 of the Idaho Section entirely omits the words "by reckless or unlawful operation of a motor vehicle, caused or contributed to," and substituted the words "has been involved as a driver in."
[10] Ariz.Rev.Stat. § 28-1122.
[11] 93 Ariz. 273, 380 P.2d 136 (1963).
[12] 35 Cal.2d 870, 222 P.2d 1 (1950).
[13] 71 A.C. 233, 77 Cal. Rptr. 816, 454 P.2d 712 (Cal. 1969).
[14] See Carnegie v. Department of Public Safety, 60 So.2d 728, 730 (Fla. 1952), in which this Court recognized that a driver's license cannot be arbitrarily or capriciously revoked or suspended: "But whether it be termed a `privilege' or a `right,' it is clear that such a license, once granted, is of substantial value to the holder. There are numerous classes of persons, such as drivers of milk trucks, laundry trucks, travelling salesmen, etc., who depend for their livelihood upon the operation of a motor vehicle; and to them their driver's license is just as valuable as a license to practice is to a doctor or lawyer."
[15] See citations in footnote 2 of the opinion of Mr. Justice Boyd, supra.