79 So.2d 129 (1955)
Mavis HUGHES, Plaintiff-Appellee,
v.
DEPARTMENT OF PUBLIC SAFETY, State of Louisiana, Defendant-Appellant.
No. 3967.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
C. Wayne Hays, Baton Rouge, for appellant.
*130 Erlo J. Durbin, Denham Springs, for appellee.
TATE, Judge.
In this case we are called upon to decide for the first time the power of the Louisiana Department of Public Safety to suspend an operator's driver's license and an owner's vehicle registration certificate under the provisions of the Motor Vehicle Safety Responsibility Act, Act No. 52 of 1952, LSA-R.S. 32:851 et seq.; and the grounds of judicial review of such suspension.
A devolutive appeal by the Department of Public Safety is now before us from a judgment enjoining it from suspending plaintiff Mavis Hughes' driver's license and also her vehicle registration certificate under the provisions of said Act. Previously, the Department had applied for writs on the failure of the trial court to allow a suspensive appeal and we held (which ruling we affirm) that the Department is allowed only a devolutive appeal, when to permit a suspensive appeal would nullify the judgment of the trial court and its stay powers under the Act, Hughes v. Department of Public Safety, La.App., 70 So.2d 597.
In response to the social problem posed by uncompensated victims of financially irresponsible, motorists, all forty-eight States have passed either compulsory insurance or financial responsibility acts. Forty-two States have financial responsibility acts similar to ours, LSA-R.S. 32:851 et seq., requiring the operator or owner of a vehicle involved in an accident to post security (if he has no liability insurance or equivalent in force at the time of the accident) to pay resultant damages if subsequently cast therefor; or, on failure to post same, to undergo suspension of his operator's driver's license and/or owner's vehicle registration. See Comment, "Compensation for Motor Vehicle Accident Victims: The Louisiana Motor Vehicle Safety Responsibility Act", 27 Tulane Law Review 341. The constitutionality of such Acts and of such license suspension provisions has been upheld without exception, see Reitz v. Mealey, Commissioner, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21; Hadden v. Aitken, Director, 156 Neb. 215, 55 N.W.2d 620, 35 A.L.R.2d 1003, Annotation, "Validity of Motor Vehicle Financial Responsibility Acts", 35 A.L.R.2d 1011, particularly pages 1021-1025, Rosenblum v. Griffin, 89 N.H. 314, 197 A. 701, 115 A.L.R. 1367. A license to operate a vehicle upon the highways of the State is a privilege and not a property right, although the State may not deny this privilege to any of its citizens arbitrarily or capriciously. Such financial responsibility acts are sustained under the police power of the States to provide some remedy for the uncompensated victims of automobile accidents and thus to somewhat alleviate the social problem thereby resulting in this motorized age.
The present proceedings were instituted when (as a result of an accident of July 29th, 1953, involving Miss Hughes as operator and owner of a car upon which no liability insurance was in force at the time of the accident) the Department of Public Safety under LSA-R.S. 32:872, subd. C, by order dated October 15th, 1953, suspended Miss Hughes' driver's license and automobile registration plates as of October 30, 1953, if she failed before this latter date to furnish bond or authorized substitute in the amount of $998.59 (the amount of the property damage to the four other cars involved in the accident); this procedure being authorized by LSA-R.S. 32:872, subd. B. Petitioner's suit was filed on October 23, 1953, seeking review of this order, under LSA-R.S. 32:852, subd. B, and within the 30 days permitted therein, on the grounds that the district court had discretion "to modify, affirm, or reverse" LSA-R.S. 32:852, subd. B, the Department's order because plaintiff Hughes needed the car to earn her livelihood and was financially unable to furnish security, and because she allegedly was not negligent in operation of her vehicle in the accident in question. Without written reasons, the court granted judgment in favor of plaintiff, enjoining the Department from suspending *131 the driver's license and automobile registration.
The applicable provisions of the Act, in which the Department of Public Safety is referred to as "the commissioner", are:
Section 5, subd. B, LSA-R.S. 32:872, subd. B, provides:
"The commissioners shall, within sixty days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, * * *." (Italics ours.)
Subsection C thereof, LSA-R.S. 32:872, subd. C provides that license and registration suspension would not apply:
"(1) To such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accidents;
"(2) To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;" (Italics ours).
The remaining portion of Subsection C provide substitutes for insurance and the policy limits acceptable.
Section 6, LSA-R.S. 32:873 provides:
"Further exceptions to requirements of security.
"The requirements as to security and suspension in [Section 5] R.S. 32:872 shall not apply
"(1) To the operator or the owner of a motor vehicle involved in an accident wherein no injury or damage was caused to the person or property of any one other than such operator or owner;
"(2) To the operator or the owner of a motor vehicle legally parked at the time of the accident;
"(3) To the owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, express or implied, or was parked by a person who had been operating such motor vehicle without such permission; nor
"(4) If, prior to the date that the commissioner would otherwise suspend license and registration or non-resident's operating privilege under Section 5, there shall be filed with the commissioner evidence satisfactory to him that the person who would otherwise have to file security has been released from liability or been finally adjudicated not to be liable or has executed a duly acknowledged written agreement providing for the payment of an agreed amount in installments, with respect to all claims for injuries or damages resulting from the accident.

"Provided, that notwithstanding any of the provisions of this act, the commissioner shall never suspend any registration of any owner of a motor vehicle involved in any accident where under the law of this State such owner is not legally liable for damages arising from such accident." (Italics ours.)
By Section 39, LSA-R.S. 32:857, it is provided that the Act shall be interpreted and construed so as to effectuate its general purpose to make uniform the laws of those States which enacted it. The specific purpose set forth in the Act's title is to provide for "proof of financial responsibility" by owners and operators of motor vehicles.
It is specifically set forth in the Act that the Department of Public Safety is to suspend the driver's license of all operators involved in a motor accident who do not comply with the financial responsibility provisions without exception and without regard to legal liability. Although this may work a financial hardship on some motorists, the fundamental legislative purpose was to alleviate the financial hardship *132 of those injured in an accident and the resultant social problem, and to forbid future access to the highways to the financially irresponsible drivers involved in an accident unless they complied with the Act. This is also the jurisprudence of other States with similar statutes, see Annotation, 35 A.L.R.2d 1011.
The Act further provides that the Department is under the same mandatory duty to suspend the registration certificate and plates of all non-complying owners, unless at the time of the accident the car was being operated without the owner's permission or unless such owner is not "legally liable for damages arising from such accident", see italicized proviso, Section 6, LSA-R.S. 32:873, supra. Since the Act specifically and repeatedly treats separately of the penalties and remissions of the owner and of the operator of each motor vehicle involved in any accident, it appears and we so hold that the proviso regarding non-suspension of the owner's registration (specifically omitting reference to the operator's driving license) when "such owner is not legally liable for damages arising from such accident" means when such owner is not legally liable as owner for such damages.
Thus, even though the vehicle involved in an accident is driven by another with the owner's consent, the proviso prevents suspension of the registration plates if there is no legal relationship between the operator and the owner by which the latter may be held liable, such as where the owner loaned his vehicle to a friend for the latter's personal errand, or where the car is leased or rented, and even in these cases, the Department may require the owner to furnish proof of financial responsibility, but restricted to pay only the contingent liability "in his or its capacity as owner" and not to satisfy any liability of the operator, Section 33, LSA-R.S. 32:1041.
To hold that the uninsured operator would be subject to license suspension regardless of fault in the accident, but that suspension of her registration certificate as owner would require predetermination of the question of her liability (negligence) as operator would appear to be inconsistent with both the general purpose of the Act and its specific provisions requiring security to pay any damages "as may be recovered" in the courts, Section 5, subd. A, LSA-R.S. 32:872, subd. A. The administration of the Act is predicated upon the Department's speedy determination of financial responsibility, and upon the courts' ultimate determination of fault and consequent legal responsibility. Both the administration of the Act and the injured parties sought to be protected would be burdened by administrative and judicial proceedings attempting to predetermine fault, in derogation of the fundamental purposes of the Act.
We feel that logical construction of the statute as a whole does not admit the conclusion that predetermination of the operator's fault in the accident is a prerequisite to suspension either of the operator's license or of the owner's registration. Legal liability by reason of fault must necessarily be determined judicially in proceedings for monied judgment between the parties.
Thus regardless of whether Miss Hughes was free from fault or not[1], if she was uninsured at the time of the accident and does not post bond as required by the Act, her license as operator must be suspended, and also her registration as owner.
However, the security and suspension requirements of the Act may be avoided or rescinded upon receipt by the Department as to the uninsured motorist not only of satisfactory evidence of release, settlement, or payment of all claims for damages arising *133 out of the accident, but also of satisfactory evidence of financial adjudication of non-liability or that one year has passed following the accident without institution of suits against that person for damages caused thereby; Sections 5, subd. A, 7, 10 of Act, LSA-R.S. 32:872, subd. A, 874, 877.
The pleadings and evidence indicate that the accident occurred on July 29, 1953. We were informed by counsel that no suit had been filed against plaintiff arising out of the accident in question. While at the time of these proceedings a year following the accident had not elapsed and further the record contains no evidence that suit was not filed within the year, and we must accordingly reverse the District Court's judgment enjoining suspension; nevertheless, to prevent hardship not required by the Act, we will remand this case to the trial court with instructions to stay the suspension order to allow plaintiff a reasonable time within which to furnish the Department satisfactory evidence that no legal proceedings have been filed against her to recover any damages occasioned by the accident (or, if filed, that same have been disposed of by final adjudication of non-liability, release, or other final settlement, as provided by the Act).
In view of our reversal of the District Court judgment, it is unnecessary to dispose of appellant's other contentions (which we believe to be correct) that the trial court erred in casting the Department for court costs (see LSA-R.S. 13:4521) and also in granting a permanent injunction upon a rule nisi hearing for preliminary injunction only.
For the reasons above assigned, the judgment of the trial court herein enjoining the Department of Public Safety from suspending petitioner's license and registration plates is herewith reversed, and plaintiff-appellee is cast with all costs of these proceedings. But the suspension order of the Department of Public Safety dated October 15th, 1953, is hereby stayed for a period of 30 days from date of finality of this judgment, within which petitioner to furnish the Department of Public Safety satisfactory evidence that no suit was instituted against her within the year following the accident as a result thereof; or if filed, that same has been satisfied or settled as provided by the Motor Vehicle Safety Responsibility Act, LSA-R.S. 32:851 et seq.
NOTES
[1] Actually, from cross-examination of Miss Hughes it is apparent that her negligence or at least contributory negligence is not excluded as a cause at least of the damage to the three parked cars struck, when Miss Hughes exceeding the speed limit attempted to pass another car from the rear and collided therewith, causing it to carom into the parked cars.