308 So.2d 321 (1975)
Merian M. CROSS
v.
Hickley WAGUESPACK, in his Capacity as Director of Department of Public Safety and Sgt. Arnold Fontana, in his Capacity as Officer in Charge of Financial Responsibility Division Troop "B" Louisiana State Police.
No. 6653.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 1975.
Rehearing Denied March 12, 1975.
*322 Galen S. Brown, New Orleans, for plaintiff-appellant.
Foye L. Lowe, Jr., Baton Rouge, for defendants-appellees.
Before REDMANN, LEMMON and GULOTTA, JJ.
*323 REDMANN, Judge.
Louisiana law suspends the driver's license and the vehicle's registration when an uninsured motor vehicle is involved in an accident of specified severity unless the driver or owner posts security; La.R.S. 32:871, 32:872. This forma pauperis appeal from the district court's denial of relief is by a driver-owner who was ordered to post security or surrender her license and registration. The questions are of procedural due process. We affirm while amending the amount of security.[1]
We note preliminarily that state law may not provide that "not all [uninsured] motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses." See Bell v. Burson, 1971, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90.
Bell pretermitted the equal protection issue, 402 U.S. at 540, n. 4, 91 S.Ct. 1586, in ruling that procedural due process requires an appropriate pre-suspension hearing on whether a reasonable possibility exists that the driver's fault would make him liable for the damages from the accident. "[W]e hold only that the failure of the present Georgia scheme to afford the petitioner a prior hearing on liability ... denied him procedural due process in violation of the Fourteenth Amendment." Id., 543, 91 S.Ct. at 1591.
Hughes v. Department Pub. Safety, La.App. 1 Cir. 1955, 79 So.2d 129, 131, declares that an uninsured driver's operator's license must be suspended after an accident unless bond is posted, "without exception and without regard to legal liability."[2] If this were our conclusion, Bell might require holding the Louisiana statute unconstitutional.[3]
But our conclusion is to the contrary. First, R.S. 32:872, subd. A obliges the defendant to determine "the amount of security which shall be sufficient in his judgment to satisfy any judgment ... for damages ... as may be recovered against each operator or owner." (Our emphasis.) On what seems a clear case of nonliability, the defendant has authority and is obliged to make an initial determination that no damages are recoverable and therefore zero security will suffice. Second, R.S. 32:876 expressly authorizes the defendant to reduce the security "if, in his judgment, the amount ordered is excessive." Thus, upon a hearing, if the defendant determines there is no reasonable possibility of the driver being held liable he again has authority under the statute and is obliged under the constitution to determine that even a nominal security is "excessive", and to reduce it to zero.
Although the statute expressly prohibits suspending the owner's registration of a nonliable owner, § 872, it omits any similar express rule against suspending the operator's license of nonliable drivers. But such an omission does not deprive the commissioner of the "judgment" that § 872, subd. A and especially § 876 oblige him to exercise in fixing the amount of security on the basis of the judgments that "may be recovered," § 872, subd. A.
*324 In fact the Department "treats Hughes as at least having been glossed by Bell," in counsel's words, and does afford hearings to drivers, so that those who are not even possibly liable need not be suspended.
Accordingly, neither as written nor as applied does the statute deny procedural due process by refusing hearing on liability.
But petitioner argues that the hearing she had in the department denied her due process by relying on a police report's hearsay. She cites Goldberg v. Kelly, 1970, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287: "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."
But it is only the opportunity which is essential. The department must make its preliminary evaluations on the basis of the police report (and the sworn reports of other drivers, which only relate to amount of claim).
"[T]he inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability. That adjudication can only be made in litigation between the parties involved in the accident. Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee." Bell, 402 U.S. at 541, 91 S.Ct. at 1590.
Here, the police report (not present in our record) presumably revealed the basic fact that the accident occurred in an intersection controlled by a stop sign which faced our petitioner, and that the other car was on the favored street. This reported physical circumstance as well as the hearsay of how the accident happened would establish the "reasonable possibility" of our petitioner's liability, in the absence of contradictory evidence. At the departmental hearing petitioner did not dispute but confirmed that she faced the stop sign. Her only exculpatory statement was that some large sign blocked her view of the favored street.
Furthermore, petitioner could have summoned and cross-examined whom she pleased. She did not do so, and argues that the department's requirement of witness fees deprives her of access to the hearingthough she did not request waiver of fees on the basis of poverty, and this argument is therefore not considered.
Since the purpose of the initial hearing is only to determine "reasonable possibility" of liability, we conclude that commensurate procedural due process was afforded even at the initial hearing.
And in fact petitioner had confrontation and cross-examination at the district court, prior to the effectiveness of the suspension order.[4] She has no valid due process complaint; Jennings v. Mahoney, 1971, 404 U.S. 25, 92 S.Ct. 180, 30 L. Ed.2d 146.
Finally we note petitioner's argument, from Wright v. Malloy, 1974, 373 F.Supp. 1011, aff'd, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261, that the administrative hearing's scope impermissibly excluded consideration of the amount of the security, which petitioner argues is set by § 872, subd. A at the amount claimed by the other driver, which may be "exaggerated" to force a driver to settle. Petitioner errs. First, the security is not fixed by statute at the amount claimed, but is initially fixed *325 by the commissioner at an amount "sufficient in his judgment" to satisfy liability, § 872, subd. A. (He doubtless considers the claimed amount, to which the department's form obliges the claimant to swear by affidavit, although it does not oblige the claimant to recite that the claim for property damages is based on a repairman's estimate.) Second, § 876 expressly authorizes the commissioner to reduce the security "if, in his judgment, the amount ordered is excessive." The hearing could therefore have considered the amount, although it was apparently not there questioned. In the district court, the other driver testified he had a repair estimate on his car, to which he had added $100 for his radiator (which developed a leak which he suspected was caused by the accident) to make the total his report claimed. Had this same testimony been presented at the commissioner's hearing he would presumably have reduced the security by $100 as we now do.[5]
The judgment is affirmed but amended to reduce security by $100.
NOTES
[1] Plaintiff's petition was filed November 15, 1973, alleging an order of suspension of October 9, 1973. R.S. 32:852, subd. B allows appeal to a district court "within thirty days from the effective dates of the order." R.S. 32:872, subd. B requires notice of suspension not less than ten days prior to the effective date. We conclude the petition was timely.
[2] Hughes reasoned from this premise that "construction of the statute as a whole does not admit the conclusion that predetermination of the operator's fault in the accident is a prerequisite to suspension either of the operator's license or of the [operator-] owner's registration." Id. at 132. But see R.S. 32:873's rule that "the commissioner shall never suspend any registration of any owner ... not legally liable...."
[3] Defendant's argument that petitioner could not attack the constitutionality of the statute without first citing the state attorney general overlooks C.C.P. art. 1880's self-limitation to actions for declaratory judgments. Only in declaratory judgment actions seeking a declaration of unconstitutionality is there a requirement for citation of the attorney general.
[4] R.S. 32:852 authorizes the district court judge to stay the department's orders. Although no stay appears in this record (except pending appeal), the motion for appeal shows petitioner retains her driver's license. The testimony shows she no longer has the automobile.
[5] We ignore the alleged personal injury of petitioner's passenger, who apparently filed no report of any claim. The security amount was based on the property damage claim alone.