MILLER, Judge.
Plaintiff Camille Quoyeser appeals the denial of injunctive relief from enforcement of a Department of Public Safety administrative decision to suspend his driver’s license for refusal to take a test required by the Implied Consent Law, LSA-R.S. 32:661-669. The denial was based on a review of that decision and evidence heard by the trial judge. We affirm.
At 1:05 a. m. State Trooper Gerald F. Melton was patroling on Highway 90. He observed a vehicle weaving and driving erratically — crossing the center line into the opposing lane and running off the shoulder. He had difficulty getting the driver to stop and summoned help on his radio. Trooper David W. Davenport responded and took a position to intercept the vehicle. The driver, Mr. Quoyeser, stopped shortly after Davenport had been summoned. Trooper Melton' immediately detected the smell of alcoholic beverages and Quoyeser had to lean against his car for balance. Melton placed Quoyeser under arrest and explained to him his Miranda rights. Quoyeser was placed in the trooper’s police unit and the PEI van was summoned to administer a Photoelectric Intoximeter test.
*329 State Police Lieutenant C. C. Barton drove the PEI van to the scene of the arrest and was prepared to administer the test. Quoyeser was placed in the van and “read his rights” under R.S. 32:661 et seq. from a printed form similar to that quoted in Swan, infra, at 311 So.2d 449. Quoyeser was belligerent and said he was not taking any test—he refused to sign anything. Lieutenant Barton read the rights to Quoy-eser again. Both officers “explained the entire consequences” of Quoyeser’s refusal to take the test, and Quoyeser steadfastly refused to sign. He never requested to see or call an attorney.
Quoyeser testified that he was driving to the home of a business associate in a line of three cars—one associate was ahead and one behind. When he got out of the car the officer asked him to walk a straight line and then “wrote out the ticket (for D.W.I.) and I refused to sign the ticket.” Tr. 36. The reason he gave for refusing to sign was he “always” had been advised not to sign anything without legal counsel in matters such as this. Each time he was asked to sign the form acknowledging the effect of his refusal to take the PEI test, he refused to sign anything without consulting an attorney. Quoyeser made it clear he didn’t ask to see an attorney, “I just said I wasn’t going to sign anything without having my attorney period.” Tr. 37-8. On cross examination, Quoyeser was unable to remember many relevant facts. At the conclusion of his testimony, the trial judge took note of this and asked him to explain why. Quoyeser explained “I was under the influence, sir.” Tr. 39.
Quoyeser was brought to the parish jail and bonded out one hour after his arrest. So far as the record indicates, Quoyeser never requested an attorney.
Quoyeser contends his refusal to sign anything until he consulted an attorney was taken by the officers to mean he refused to take the chemical test offered. He argues he had been advised of his rights to have an attorney and he was exercising these rights by refusing to sign until he saw an attorney.
The trial court found no merit to this contention. Quoyeser never asked for an attorney. The effect of his refusal to take the PEI test was carefully explained to him.—his refusal would result in a six month suspension of his driver’s license. The record supports this conclusion.
Swan v. Department of Public Safety, 311 So.2d 498 (La.App. 4 Cir. 1975) is distinguished on the facts. In Swan the offender asked for an attorney and his request was denied. Quoyeser never requested an attorney—he simply refused to sign anything until he consulted an attorney.
Swan recognized the licensee did not have the right to counsel with respect to making his decision about taking the PEI test. 311 So.2d at 500. Thus the failure to afford counsel to the licensee prior to requiring him to take the test does not prevent license suspension. In Swan the officers misled the licensee and did not remove the misunderstanding. There was no such confusion here.
Nothing in this re.cord supports the contention the police misled Quoyeser. It was established and licensee admitted he was under the influence of intoxicants and refused to cooperate from the start. He did not even remember being advised of his rights by the arresting officer. Tr. 36-7.
Quoyeser next contends his rights to due process are denied because his license may be suspended for six months for refusing to take the test, whereas if guilty of D.W.I. his license could be suspended for only two months. He was not prosecuted for the D.W.I. offense. We reject this contention.
There is no comparison between the two statutes. The D.W.I. statute (LSA-R.S. 14:98) provides penalties for the first of *330 fense of a fine of up to $400 and imprisonment up to six months. A second conviction results in a larger fine together with a mandatory 125 days of imprisonment. A third conviction provides for imprisonment at hard labor for a minimum period of one year. The suspension of driving privileges is only a portion of the penalty for D.W.I., whereas suspension is the only sanction applied for refusal to take the test.
Lastly Quoyeser contends the suspension of his license would violate due process in view of the holding in State v. Jones, 316 So.2d 100 (La.1975). The issue in Jones related to the use in criminal cases of the results of a Photoelectric Intoxi-meter brand of sobriety test. But the court did not prohibit the use of PEI tests. Instead the court prescribed the manner for its use at 316 So.2d 105. That decision does not affect the Implied Consent Law. Furthermore, in Meyer v. State, Dept. of Public Safety Lic. Con., Etc., 312 So.2d 289 (La.1975), the burden of proving invalidity of a PEI test was held to rest upon licensee. Quoyeser made no effort to prove a PEI test would not have been properly conducted.
In deciding these issues of due process, we find it appropriate to refer to the rule of construction set forth in State v. Free, 321 So.2d 50 (La.App. 3 Cir. 1975). A person’s right to drive a motor vehicle is in furtherance of the public interest and the general public’s right to safety on the highways is superior to the individual’s privilege to use the highways. Just as habitual offenders may have their license suspended, so also may those who unjustifiably refuse to submit to a PEI test. A license to operate a vehicle upon the highways is a privilege and not a property right. Hughes v. Department of Public Safety, 79 So.2d 129 (La.App. 1 Cir. 1955). See also 60 C.J.S. Motor Vehicles § 159 (1969); 7 Am.Jur.2d Automobiles and Highway Traffic §§ 6, 12 (1963).
The record establishes Quoyeser did unjustifiably refuse a properly tendered sobriety test. The period of suspension is not unlawful and the suspension of his driver’s license does not violate due process.
The trial court judgment is affirmed at appellant’s costs.
Affirmed.